## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STACY COSTA, NATHANIEL GUERRERO, and MISSY ROBINSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION,<br><br>Defendant. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Stacy Costa, Nathaniel Guerrero, and Missy Robinson ("Plaintiffs"), by and through their undersigned counsel, hereby bring this class action against Defendant, Whirlpool Corporation ("Whirlpool" or "Defendant"), individually, and on behalf of all others similarly situated, and allege upon personal knowledge as to their own acts and experiences, and as to all other matters, upon information and belief, including the investigation conducted by Plaintiffs' counsel.

## <u>INTRODUCTION</u>

1.      This is a class action brought against Whirlpool by Plaintiffs on behalf of themselves and all other similarly situated consumers who purchased certain French-door style, or side-by-side, Whirlpool-, Maytag-, KitchenAid-, and Kenmore-branded refrigerator-freezer combinations manufactured by Defendant with defective wiring (referred to herein as the "Class Refrigerators").

2.      The Class Refrigerators contain defective wires, which run through the freezer door and control basic, advertised functions including the ice maker and dispenser, the water dispenser,

and the control panel on the doors.  These wires are intended to flex when the door is opened and closed. Due to defect in the materials used, however, the wires break and/or fray quickly under ordinary use (the "Defect")—often shortly after the one-year warranty has expired—rendering some or all of these functions useless.  Moreover, the broken and frayed wires create a safety hazard due to the presence of exposed, live wires.

3.      Upon information and belief, the Defect occurs in all models of refrigerators manufactured by Whirlpool that have French doors, or side-by-side doors, and an in-door ice maker, water dispenser, and/or control panel.[1]

4.      Whirlpool has been aware of this defect for at least a decade. Hundreds, if not thousands, of consumers have complained directly to Whirlpool about the defect, including on Whirlpool's social media accounts and on public forums that Whirlpool personnel monitor.  Those complaints also necessitated Whirlpool's communications with repair technicians and service representatives about the Defect, which further evidences Whirlpool's awareness of the problems.

5.      Moreover, due to the nature of the defect, which results from substandard quality wiring, Whirlpool necessarily would have discovered it in the course of its design and testing of the Class Refrigerators.

---

[1] Plaintiffs' investigation into the models that are included in the class is ongoing. The term "Class Refrigerators" includes, but is not limited to, at least the following Whirlpool model refrigerators: 106.51133213, 106.51783412, 10651769511, 10651773510, GSC25C4EYY03, GSF26C4EXY03, JSC23C9EEM00, KRFC704FPS, KRFF577KPS, KRMF706ESS, KRSC500ESS00, KRSF705HPS01, MFI2570FEZ, MSS25C4MGZ, MSC21C6MFZ, WMH31017HZ, WRS335SDHM03, WRS511CIH6101, WRS526SIAE, WRS555SIHB03, WRS555SIHZ03, WRS571CIHZ02, WRS57109638, WRS571C1H201, WRS571C1HZOO, WRS571CHZ, WRS571CID, WRS571CIDB, WRS571CIDM, WRS571CIH, WRS571CIHV, WRS571CIHWO1, WRS571CIHZ01, WRS576FIDW01, WRS576CIDW00, WRS586FIEM04, WRS586FLDB00, WRS973CIHZ00, WRS588FIHB, WRS588FIHV, WRS588FIHZ, WRS588FIHW, WRS588FIHZ, WRS688FIHV, WRS965CIAE, WRS970CIHZ, WRS975SIDM, WRS97CIDE, WRSA71CIHZ, WRSA88FIHN, WRSA88FIHZ, WSF26C2EXY02, WSF26C2EXB01, WSF26C2EXF01, and WSF26C3EXF01. Plaintiffs reserve the right to add to or amend the definition of Class Refrigerators as more information becomes available.

6.      For years Whirlpool has continued to sell these defective Class Refrigerators to the public without disclosing the Defect, which manifests after just a few years under ordinary use as a result of simply opening and closing the refrigerator doors.

7.      Whirlpool advertised the Class Refrigerators to include numerous key functions, such as an ice maker/dispenser and water dispenser. As a result of the Defect, these basic advertised features of the Class refrigerators—such as the ice maker or water dispenser—are almost certain to fail within just a few years. A refrigerator should last for ten to twenty years, but the defect frequently manifests within two or three years of purchase.

8.      Moreover, the Defect is irreparable.  As Whirlpool technicians have acknowledged, the only way to restore functionality is to replace the entire freezer door, but the replacement doors suffer from the same defective wiring, meaning the defect will simply manifest again in a few years. Moreover, replacement doors are often unavailable or on a months-long backorder, and, even if they are available, the cost of a new door is typically more than $1,200.  As a result, most consumers are forced to purchase an entirely new refrigerator.

9.      The functions that cease operating as a result of the Defect are advertised features that form part of the basis of the bargain. Whirlpool advertises the "Key Features" of Class Refrigerators to include "Exterior Ice and Water Dispenser."[2] As another example, Whirlpool touts that with a Class Refrigerator, the consumer will not need to "worry about refilling ice trays with this pre-installed icemaker that makes sure you always have plenty of ice on hand."[3]

---

[2] https://www.whirlpool.com/kitchen/refrigeration/refrigerators/french-door/p.36-inch-wide-french-door-refrigerator-25-cu.-ft.wrf555sdfz.html?
[3] https://www.whirlpool.com/kitchen/refrigeration/refrigerators/french-door/p.36-inch-wide-counter-depth-french-door-refrigerator-20-cu.-ft.wrf550cdhz.html

**Factory-Installed Icemaker**

Don't worry about refilling ice trays with this pre-installed icemaker that makes sure you always have plenty of ice on hand.

10.     As another example, Whirlpool advertises the consumer can "Access filtered water and ice without opening the refrigerator door."[4]

**Exterior Ice and Water Dispenser with EveryDrop® Filtration**

Access filtered water and ice without opening the refrigerator door. Replace your filter every 6 months to maximize the reduction of contaminants.

11.     Whirlpool advertises the Class Refrigerators' ice maker/dispensers and water dispensers because these functions are important to consumers when deciding which refrigerator to purchase.  Plaintiffs and consumers relied on Whirlpool's misrepresentations regarding the ice maker/dispenser, water dispenser, and control panel. Because of the Defect, consumers are deprived of the benefit of basic features that were part of the basis of their bargain.

12.     Central functions of a refrigerator-freezer combination with an ice maker/dispenser and water dispenser include the functions of making and dispensing ice and dispensing water. But when the Defect manifests, it causes these central functions to fail.

13.     Broken wires also pose a safety risk to consumers because live exposed wires can contribute to electrocution or fire. In the case of a refrigerator, the risks are heightened given the presence of water, which when in contact with exposed wiring, can cause short circuits, shocks,

---

[4] https://www.whirlpool.com/kitchen/refrigeration/refrigerators/french-door/p.36-inch-wide-counter-depth-french-door-refrigerator-20-cu.-ft.wrf550cdhz.html

and fires. This is well known by refrigerator manufacturers, such as Whirlpool.

14.     Despite that the Defect poses a safety risk and adversely affects the central function of the Class Refrigerators, Whirlpool has omitted and otherwise failed to disclose the known Defect. Despite its knowledge of the Defect, Whirlpool did not disclose to consumers that many refrigerators suffer from the Defect and continued to design, manufacture, market, and sell them.

15.     Had Plaintiffs and other consumers known about the Defect within their Class Refrigerators, they would not have purchased them or would have paid substantially less than they did for them.

16.     As set forth herein, Whirlpool has committed unfair, deceptive, and misleading consumer practices in connection with the design, manufacture, marketing, and sale of its refrigerators, Plaintiffs and other consumers have suffered an ascertainable loss, injury in fact, and have otherwise been harmed by Whirlpool's conduct.

17.     Accordingly, Plaintiffs bring this class action against Whirlpool for its violations of state consumer protection statutes, including the California Legal Remedies Act, Cal. Civ. Code §§ 1750–1785 ("CLRA"), California False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"), Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790–1795.8, Florida Unfair and Deceptive Trade Practices Act, F.S.A. §§ 501.201-.213 ("FDUTPA"), and the Noth Carolina Unfair and Deceptive Acts and Practices Act, N.C. Gen. Stat. §§ 75-1.1, *et. seq.* ("North Carolina UDAPA"), its common-law fraud, and breaches of express and implied warranties, and violations of the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"). Plaintiffs seek monetary, injunctive, and other appropriate relief for damages they and all similarly situated consumers suffered and continue to suffer.

## JURISDICTION AND VENUE

18.    This action is properly before this Court, and this Court has subject matter jurisdiction over this action under the Class Action Fairness Act. At least one member of the proposed class is a citizen of a different state than Whirlpool, the number of proposed class members exceeds 100, and the amount in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

19.    In addition, under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over the state law claims because all the claims are derived from a common nucleus of operative facts and are such that Plaintiffs would ordinarily expect to try them in one judicial proceeding. Further, this Court may also exercise supplemental jurisdiction over Plaintiffs' MMWA claims.

20.    This Court has personal jurisdiction over Defendant because it is incorporated in the State of Delaware; has consented to jurisdiction by registering to conduct business in the state; maintains sufficient minimum contacts in Delaware; and otherwise intentionally avails itself of the markets within Delaware through promotion, sale, marketing, and distribution of its Class Refrigerators, which renders the exercise of jurisdiction by this Court proper and necessary as Whirlpool is "at home" in Delaware.

21.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)–(c). A substantial part of the events or omissions giving rise to the claims occurred in this District. Plaintiffs may properly sue Whirlpool in this District because Delaware is Whirlpool's state of incorporation.

## THE PARTIES

A.    **Plaintiffs**

**Plaintiff Missy Robinson**

22.    Plaintiff Missy Robinson is a citizen of North Carolina.

23.    Plaintiff Robinson purchased a KitchenAid-branded side-by-side refrigerator, model number KRSF705HPS01, in or around July 2021, for a total purchase price of about $1,900 from Appliance Rehab. Safety, reliability, and having a functioning ice maker, ice dispenser, and water dispenser were important factors in Plaintiff Robinson's decision to purchase her Class Refrigerator. Before making her purchase, she researched information online and examined the product, and Whirlpool's labels, stickers, and other product information, at Appliance Rehab. The refrigerator was advertised as being high-quality, reliable, and having an ice maker, in-door ice dispenser, and water dispenser. None of the information to which she was exposed disclosed the Defect, even though Whirlpool unquestionably knew about it.

24.    In or around May 2023, her refrigerator's ice maker and water dispenser began to intermittently fail. Initially, the ice maker stopped dispensing ice, yet it was still making ice. It then ceased making ice altogether as a result of severed wires. The water dispenser also experienced a total failure.

25.    Plaintiff Robinson reached out to several repair technicians about the issue who informed her that the failures of the ice maker and water dispenser are known issues and are due to defective wiring in the refrigerator door. The technicians advised Plaintiff Robinson that purchasing a new refrigerator would be cheaper than purchasing a replacement door. She did not purchase the replacement door. Plaintiff Robinson currently owns a refrigerator that has no functioning ice maker or water dispenser.

26. Plaintiff Robinson filed a complaint with the Better Business Bureau (BBB) regarding the issue, and a KitchenAid representative responded to her complaint and informed her that KitchenAid would not provide any coverage of cost for a replacement refrigerator and that any replacement door would bear the same wires and, therefore, the same Defect.

27. A functioning ice maker and water dispenser and Whirlpool's representations regarding its ice makers/dispensers and water dispensers were important factors in Plaintiff Robinson's decision to purchase her refrigerator, for which she paid a premium. And had Plaintiff Robinson been aware of the Defect at the time of purchase, she would have either not purchased the refrigerator or purchased it for a substantially lower price.

**Plaintiff Stacy Costa**

28. Plaintiff Stacy Costa is a citizen of Florida.

29. Plaintiff Costa purchased a Whirlpool refrigerator, model number WRS571CIHZ02, in or about May 2021, from Home Depot for approximately $ 1,732. Safety, reliability, and having a functioning ice maker, ice dispenser, and water dispenser were important factors in Plaintiff Costa's decision to purchase her Class Refrigerator. Before making her purchase, she researched information online and examined the product, and Whirlpool's labels, stickers, and other product information, at Home Depot. The refrigerator was advertised as being high-quality, reliable, and having an ice maker, in-door ice dispenser, and water dispenser. None of the information to which she was exposed disclosed the Defect, even though Whirlpool unquestionably knew about it.

30. In or around April 2023, her refrigerator's icemaker started to intermittently fail. While it made ice, it did not consistently dispense ice. A few weeks later, it stopped dispensing ice altogether. In June 2023, a repair technician replaced the auger motor and charged her $180, but it

did not solve the issue because the failure was caused by broken wires in the door. After paying for that failed repair, Plaintiff Costa discovered that the wires running to the door had broken and were severed simply from the normal act of opening and closing the door.

31.     She contacted Whirlpool, and Whirlpool set up an appointment with an authorized technician, who did not show up on the scheduled day. A second appointment was made, and the Whirlpool-authorized technician informed her that the only repair was a replacement door that would cost over $1,000. She did not purchase the replacement door because it was cost prohibitive, and the replacement door would contain the same Defect, but she still had to pay the technician's service fee of $89. Her ice maker no longer dispenses ice. Plaintiff Costa now owns a refrigerator without a functioning ice dispenser. It is simply a matter of time until more wires on her door sever, and she is left without a functioning ice maker, water dispenser, and/or other central functions of the refrigerator.

32.     A functioning ice maker/dispenser and Whirlpool's representations regarding its ice makers/dispensers and water dispensers were important factors in Plaintiff Costa's decision to purchase her refrigerator, for which she paid a premium. Had Plaintiff been aware of the Defect at the time of purchase, she would have either not purchased the refrigerator or purchased it for a substantially lower price.

**Plaintiff Nathaniel Guerrero**

33.     Plaintiff Nathaniel Guerrero is a citizen of California.

34.     Plaintiff Guerrero purchased a Whirlpool refrigerator, model number WRS973CIHZ00, in or about February 2020, for a total purchase price of $3,261.41 from Home Depot. Safety, reliability, and having a functioning ice maker, ice dispenser, and water dispenser were important factors in Plaintiff Guerrero's decision to purchase his Class Refrigerator. Before

making his purchase, he researched information online and examined the product, and Whirlpool's labels, stickers, and other product information, at Home Depot. The refrigerator was advertised as being high-quality, reliable, and having an ice maker, in-door ice dispenser, and water dispenser. None of the information to which he was exposed disclosed the Defect, even though Whirlpool unquestionably knew about it.

35.     On or about June 17, 2023, his refrigerator's ice maker stopped working. Plaintiff Guerrero contacted Whirlpool for assistance, but Whirlpool provided none. He then paid $100 to replace his icemaker, which did not solve the problem because the failure was caused by broken wires in the door. His ice maker does not function. And it is simply a matter of time until more wires on his refrigerator door sever, and he is left without a water dispenser or other central functions of the refrigerator.

36.     In addition, Mr. Guerrero's refrigerator's wires are exposed, which presents a safety risk as discussed herein.

37.     A functioning ice maker and Whirlpool's representations regarding its ice makers/dispensers and water dispensers were important factors in Plaintiff Guerrero's decision to purchase his refrigerator, for which he paid a premium. Plaintiff Guerrero was unaware of the Defect at the time of purchase. Had Plaintiff been aware of the Defect, he would have either not purchased the refrigerator or purchased it for a substantially lower price.

**B.     Defendant**

38.     Defendant Whirlpool Corporation is a corporation organized and existing under the laws of Delaware with a principal place of business at 2000 N. M-63, Benton Harbor, Michigan 49022.

39.     Whirlpool is a global designer, manufacturer, retailer, and marketer of home

appliance products from laundry machines to cooking appliances. Whirlpool sells its products in all 50 states. Whirlpool owns many known household brands such as KitchenAid, Maytag, Jenn-Air, and many others.[5] In 2022, Whirlpool reported approximately $20 billion in annual sales, of which refrigerators represented 32%.[6]

## FACTUAL ALLEGATIONS

### A.      The Defect

40.      As already stated, the Class Refrigerators are designed with wires running through the freezer door that control the ice maker, ice dispenser, and water dispenser, as well as the control panel in the door. This wiring is designed to flex when the door is opened and closed. Due to Whirlpool's use of defective materials, however, the wires are too brittle to withstand flexing that occurs and is intended to occur with ordinary use.  These wires frequently break within just a year or two of purchase, but they will all—or virtually all—eventually break within the useful life of the refrigerator. For at least a decade, Whirlpool has been manufacturing Class Refrigerators that contain the Defect.

41.      Consumers, however, cannot discover the defect until it manifests. The wires are concealed inside conduit or insulating material, hidden behind panels, and concealed within the freezer door. The Defect manifests in the failure of the Class Refrigerators' essential functions, including failure to make ice, failure to dispense ice, failure to dispense water, and loss of the control panel.

42.      These functions are not only central to the operation of a modern refrigerator, but also, as Whirlpool knows, these functions are important to consumers. For example, Bosch, one

---

[5] *See* Whirlpool, Our Brand Portfolio, available at https://www.whirlpoolcorp.com/brands-we-love/.

[6] Whirlpool's 2022 10-K Annual Report at 7, available for download at https://www.whirlpoolcorp.com/2022Annual/index.php.

of Whirlpool's competitors found that: "Americans view ice as a key element of enjoying a beverage. Eighty-three percent of individuals consume at least one glass of ice in a day . . . ."[7]

43.     Consumers pay a premium for Class Refrigerators with an ice maker and water dispenser.

44.     The Defect also causes the live wires to become exposed and, therefore, poses a risk of electrocution or fire. It is obvious that a home appliance should never have exposed live wires. And especially a refrigerator that is also susceptible to water or other fluids contacting the wire and creating short circuits, shocks, or fires. This is well known by appliance manufacturers, including Whirlpool.

45.     While consumers reasonably expect their Class Refrigerators to operate for a decade or more,[8] the Defect here frequently results in failures within the first few years.

46.     Because the defect commonly manifests as an ice maker failure, consumers often pay for failed repairs or replacements of the ice maker. This, of course, does not repair the Defect.

47.     According to Whirlpool technicians, the only "repair" is to replace the entire door containing the broken wires, ice and water dispensers, and control panel. But that proffered repair is problematic for at least three reasons. First, a replacement door is expensive and, when the defect arises outside of the warranty period, is not covered by Whirlpool. Second, due to the prevalence of the Defect, replacement doors are on lengthy backorders. Third, even if the cost of a replacement door was covered by Whirlpool, it is not an adequate repair—it is a replacement of defective parts with more defective parts because the replacement door contains the same Defect (defective or substandard wires). Therefore, Whirlpool has offered no fair or adequate resolution to the Defect.

---

[7] https://www.globenewswire.com/en/news-release/2020/12/02/2138421/0/en/Bosch-Study-Reveals-Americans-Are-Ice-Obsessed-Consuming-400-Pounds-Each-Per-Year.html.

[8] https://www.consumerreports.org/cro/news/2009/03/by-the-numbers-how-long-will-your-appliances-last-it-depends/index.htm.

48.     The Defect renders the Class Refrigerators useless because they become incapable of executing the very functions for which they were, and are, advertised for sale, even when used in the manner directed by Whirlpool, and Whirlpool refuses to adequately address the problem.

49.     With respect to the Class Refrigerators and the Defect, Whirlpool failed in its duty to properly design and manufacture its products and to ensure that its products are safe and free from material defects.

50.     Due to Whirlpool's actions and omissions, Plaintiffs and consumers have suffered damages in the form of loss of use, failure of the Class Refrigerators' essential functionals, loss of the benefit of their bargain, diminution of value and overpayment for their Class Refrigerators, and lost time and expense involved in contacting Whirlpool, repair technicians, and others about the problem and waiting for replacements and/or repairs.

**B.    Whirlpool's False and Misleading Representations**

51.     Whirlpool advertises Class Refrigerators as having functional and reliable ice makers/dispensers and water dispensers, and these false and misleading advertisements are posted on its own website, on its retailers' websites, and in its retailers' stores, which ensures that consumers are exposed to them before purchasing Class Refrigerators.

52.     As noted above, ¶¶ 9–10, Whirlpool's own website advertises as the ice maker/dispenser and water dispenser as "Key Features" of Class Refrigerators. Underscoring that ice makers/dispensers and water dispensers are important to consumers, Whirlpool's website also advertises the Class Refrigerators as ones that "feature[ ] an exterior ice and water dispenser with EveryDrop$^{TM}$ filtration."



53.     Whirlpool also ensures that its retailers also repeat the same representations regarding the ice maker/dispenser and water dispenser. This, in turn, ensures that consumers will be exposed to these misrepresentations regardless of where they purchase.

54.     For example, the Lowe's website repeats the same Whirlpool representations regarding Class Refrigerators' ice makers/dispensers and water dispensers: (1) "Factory - installed icemaker – don't worry about refilling ice trays with this pre-installed icemaker that makes sure you always have plenty of ice on hand," and (2) "Exterior Ice and Water Dispenser with EveryDrop[TM] Water Filtration[:] Access Fresh filtered water and ice without ever opening the refrigerator door using dual pad sensors."[9]

---

[9] https://www.lowes.com/pd/Whirlpool-21-4-cu-ft-Side-By-Side-Refrigerator-with-Ice-and-Water-Dispenser-and-Can-Caddy-Fingerprint-Resistant-Stainless-Steel/5013699701.



**Factory-Installed Icemaker**

Don't worry about refilling ice trays with this pre-installed icemaker that makes sure you always have plenty of ice on hand.

**Exterior Ice and Water Dispenser with EveryDrop™ Water Filtration**

Access fresh filtered water and ice without ever opening the refrigerator door using dual pad dispensers.

55.     The HomeDepot website repeats the same Whirlpool representations regarding Class Refrigerators' ice makers/dispensers and water dispensers:[10]

- Exterior Ice and Water Dispenser with EVERY DROP Filtration lets you access fresh filtered water and ice without ever opening the refrigerator door using dual pad dispensers
- Don't worry about refilling ice trays with the pre-installed icemaker that makes sure you always have plenty of ice on hand

56.     While Whirlpool ensures that consumers are exposed to these representations regarding its ice makers/dispensers and water dispensers, Whirlpool manufactures and sells the

---

[10] https://www.homedepot.com/p/Whirlpool-24-6-cu-ft-Side-by-Side-Refrigerator-in-Fingerprint-Resistant-Stainless-Steel-WRS325SDHZ/302785353.

Class Refrigerators containing the Defect, which causes the ice maker/dispenser and water dispenser to fail under ordinary use.

**C.      Whirlpool's Knowledge and Concealment of the Defect**

57.     As early as 2006, consumers began complaining of the Defect online. One blog, ApplianceBlog.com, amassed many Whirlpool complaints regarding broken or frayed wires in Class Refrigerators, which caused ice makers/dispensers and water dispensers to fail. As just one example, on February 21, 2010, a consumer posted on ApplianceBlog that his fridge "decided to stop delivering ice today. Thanks to this valuable forum and community I was able to quickly discover that this is a common problem with frayed or broken wires at the bottom of the freeze[r] door. Sure enough, my blue wire is sliced through, which is why the auger doesn't respond to the ice pad being pushed."

58.     In a December 3, 2013 post on ApplianceBlog.com, a consumer reported in a forum titled "GSF26C4EXY02 Whirlpool Gold Ice Maker Problem" that the ice maker in his side-by-side refrigerator stopped working. After investigation, on December 8, 2013, the consumer reported, "I dismounted the door and peeled back the wire loom at the bottom of the door … Guess what? Clear break within the loom."[11]

59.     In a May 8, 2018 post ApplianceBlog.com, in a forum titled "Whirlpool WSF26C2EXF01 Door Icemaker Not Working," another consumer reported that his refrigerator's icemaker was not working after various attempts to repair the issue himself. An administrator of the forum posted a response noting that other consumers had posted about the same and the likely problem is "frayed or broken wires underneath the freezer door."

60.     A consumer on the same blog, posted on September 28, 2019, contacted Whirlpool

---

[11] https://www.applianceblog.com/mainforums/threads/gsf26c4exy02-whirlpool-gold-ice-maker-problem.42335/.

directly regarding broken wires in his Class Refrigerator: "[c]ontacted Whirlpool. If they don't get back with some kinda repair options, gonna contact BBB."

61.     On November 30, 2019, one consumer posted on ApplianceBlog.com requesting assistance in diagnosing why his Class Refrigerator stopped dispensing ice, to which the administrator responded, "lots of members have found frayed and broken wires causing a short or dead completely to the ice maker." The consumer responded:



62.     Consumers also post and continue to post complaints online regarding the Defect on many different websites, all of which Whirlpool monitors.

63.     On November 19, 2019, one Whirlpool consumer wrote on Consumer Affairs, "Within the 1st year the Ice Maker broke & repairman said the ill design caused the wire to break."[12]

---

[12]

https://www.consumeraffairs.com/homeowners/whirlpool_refrigerators.html?page=7#sort=oldest&filter=1.

64.    On October 14, 2019, a consumer called Whirlpool directly regarding the Defect and failed ice dispenser:[13]



| Posted by JULIA LYNN WADE on October 14, 2019 | *I have a GSS30C6EYY03 side by side and my ice maker just stopped working. I was told after many repair visits that it was the a faulty design in the door. That there is a wire that gets rubbed from opening and closing the door and in order to fix the problem the whole door needs to be replaced. I was also told by another repair man that came to fix my brand new whirlpool microwave where the fan never worked out of the box, that Whirlpool was offering a subsidy for the refrigerator with that design because they were having so many complaints. I called Whirlpool and they said that my refrigerator model number was not on the list. I do also want to mention that when I first got the refrigerator the compressor was bad and they had to give me a new one.* |

65.    On October 29, 2020, a consumer complained of the Defect to Whirlpool authorized service technician and directly to Whirlpool:[14]

P

Peter
Ridgeland, MS

★★★★★
Reviewed Oct. 29, 2020

We bought model WRS571CID*** which has an in-door ice maker that has stopped working after exactly 3 years. An excellent authorized service rep advised that the wire harness from the freezer to the door was damaged by chafing from normal opening and closing the freezer door, which has caused the ice maker wires to break, thereby disabling the ice maker. The only remedy is replacing entire the door, which would cost $1700 according to Whirlpool's published repair data, which he is obligated to charge. Apparently, the wiring harness is not a replaceable part, because I suspect the labor hours needed to disassemble and reassemble the door is prohibitive. Well, a new fridge costs about the repair. I spoke to the Whirlpool company about whether they acknowledge that the design is faulty and that the door should be replaced at their expense even out of warranty, and they declined. More

👍 Thanks Peter (10)      Report

66.    The complaints above make clear that consumers have not only complained online, but they have also contacted Whirlpool directly, or through its technicians, about the Defect with

---

[13] https://www.bigclassaction.com/lawsuit/defective-whirlpool-refrigerators.php.
[14] https://www.consumeraffairs.com/homeowners/whirlpool_refrigerators.html?page=3.

Class Refrigerators. Indeed, some consumers reported that Whirlpool was aware of the Defect.

67.     Whirlpool has known about the Defect in Class Refrigerators for a decade or more and certainly before Plaintiffs purchased their Class Refrigerators.

68.     Despite its superior and exclusive knowledge of the defect, Whirlpool has not disclosed the existence of the Defect to potential consumers. Instead, it willfully concealed the defect from and foisted the costs of ineffective repairs onto unsuspecting consumers. Whirlpool continues to deny the existence of the Defect in Class Refrigerators, at the same time it continues to knowingly sell defective Class Refrigerators to unsuspecting consumers.

## TOLLING OF STATUTES OF LIMITATION

69.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and members of the Class were deceived regarding the Class Refrigerators and could not reasonably discover the Defect or Defendant's deception with respect to the Defect. Defendant continues to deny the existence and extent of the Defect, even when questioned by Plaintiffs and members of the Class.

70.     Plaintiffs and members of the Class did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Defendant was concealing a defect and/or that the Class Refrigerators contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiffs and members of the Class at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Class could not have discovered through the exercise of reasonable diligence the existence of the Defect or that the Defendant was concealing the Defect.

71.     At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and members of the Class the true standard, quality, and grade of the Class Refrigerators and to disclose the Defect and corresponding safety risk due to its exclusive and superior knowledge of the existence and extent of the Defect in Class Refrigerators.

72.     Defendant knowingly, actively, and affirmatively concealed the facts alleged herein.  Plaintiffs and members of the Class reasonably relied on Defendant's knowing, active, and affirmative concealment.

73.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## CLASS DEFINITIONS AND ALLEGATIONS

74.     Plaintiffs bring this action and seek to certify and maintain it as a class action under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3), individually and on behalf of the following Classes.

> **Nationwide Class:** All persons in the United States who purchased one or more Whirlpool refrigerators that had the Defect.
>
> **California Subclass**: All persons in California who purchased one or more Whirlpool refrigerators that had the Defect.
>
> **Florida Subclass**: All persons in Florida who purchased one or more Whirlpool refrigerators that had the Defect.
>
> **North Carolina Subclass**: All persons in North Carolina who purchased one or more Whirlpool refrigerators that had the Defect.

75.     Excluded from the Classes are: (i) Whirlpool; (ii) Whirlpool's employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliates; (iii) governmental entities; (iv) all persons who make a timely election to be excluded from the Classes; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

76.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes and/or to add Subclasses if necessary, before the Court determines whether certification is appropriate and as the Court may otherwise allow.

77.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

78.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Fed. R. Civ. P. 23.

79.     *Numerosity*: The members of the proposed Classes are so numerous and geographically dispersed that the individual joinder of all Class members is impracticable. Plaintiffs believe that the Class contains thousands of purchasers of Class Refrigerators who have been damaged by Whirlpool's conduct. While the exact number of Class members is unknown to Plaintiffs at this time, it is in Whirlpool's control, and it is ascertainable by appropriate discovery including through Whirlpool's sophisticated databases.

80.     *Commonality and Predominance*: This action involves common questions of law or fact, which predominate over any questions affecting individual Class members, including, but not limited to:

i.     Whether Defendant engaged in the conduct alleged herein;

ii.    Whether Defendant placed the Class Refrigerators into the stream of commerce in the United States with knowledge of the Defect;

iii.   Whether Defendant knew or should have known of the Defect, and if so, for how long;

iv.    When Defendant became aware of the Defect in the Class Refrigerators;

v.     Whether Defendant knowingly failed to disclose the existence and cause of the Defect in the Class Refrigerators;

vi.    Whether Defendant's claims about the Defect are true or reasonably likely to deceive with regards to the functionality and expected longevity of the Class Refrigerators;

vii.    Whether Defendant's omissions about the Class Refrigerators were reasonably likely to deceive with regards to the functionality and expected longevity of the Class Refrigerators.

viii.    Whether Defendant's conduct alleged herein violates consumer protection laws, warranty laws, and other laws as asserted herein;

ix.    Whether Plaintiffs and Class Members overpaid for their Class Refrigerators as a result of the Defect;

x.    Whether Plaintiffs and Class Members have suffered an ascertainable loss as a result of their loss of use of their Class Refrigerators;

xi.    Whether Plaintiffs and Class Members are entitled to damages, including punitive damages, as a result of Defendant's conduct alleged herein, and if so, the amount or proper measure of those damages; and

xii.    Whether Plaintiffs and Class Members are entitled to injunctive relief.

81.    *Typicality*: Plaintiffs' claims are typical of the claims of all Class members. Plaintiff, like all Class members, purchased Whirlpool Class Refrigerators that contain a Defect. Plaintiffs, like all Class members, would not have purchased, or would have paid substantially less for, the Class Refrigerators had they known of the Defect or that Whirlpool would respond inadequately when the Defect manifested.

82.    *Adequacy of Representation*: Named Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex class action litigation, and Plaintiffs will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

83.    *Superiority*: A class action is superior to all other available means of fair and

efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of these claims, including from the need for expert witness testimony on the technical and economic aspects of the case. Individualized litigation also would risk inconsistent or contradictory judgments and increase the delay and expense to all parties and the courts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

84.    *Injunctive Relief*: Whirlpool has acted, and refuses to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
**Violations of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750–1785**
**Plaintiff Guerrero Individually and on Behalf of the California Subclass**

85.    Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

86.    Plaintiff Guerrero brings this cause of action individually and on behalf of the California Subclass.

87.    Whirlpool is a "person" as defined under the CLRA. *See* Cal. Civ. Code § 1761(c).

88.    Plaintiffs and members of the Class are "consumers" as defined under the CLRA. *See* Cal. Civ. Code § 1761(d).

89.    Class Refrigerators are "goods" as defined under the CLRA. *See* Cal. Civ. Code § 1761(a).

23

90.     The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . ." Cal. Civ. Code § 1770(a).

91.     Whirlpool engaged in unfair and deceptive acts in violation of the CLRA by the practices described above and by knowingly and intentionally concealing from Plaintiff and the California Subclass members that the Class Refrigerators suffer from the Defect (and the costs, risks, and diminished value of the Class Refrigerators as a result of this Defect). Whirlpool's conduct violated at least the following enumerated CLRA provisions:

a.  Whirlpool represented that Class Refrigerators have characteristics, uses, or benefits that they do not have in violation of section 1770(a)(5);

b.  Whirlpool represented that Class Refrigerators are of a particular standard, quality, or grade but are of another in violation of section 1770(a)(7);

c.  Whirlpool advertised Class Refrigerators with the intent not to sell them as advertised in violation of section 1770(a)(9);

d.  Whirlpool represented that Class Refrigerators have been supplied in accordance with a previous representation when they have not in violation of section 1770(a)(16); and

e.  Whirlpool inserts an unconscionable provision into its warranty in violation of section 1770(a)(19).

92.     Whirlpool's unfair or deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public, and created a safety hazard for the public.

93.     Whirlpool knew, should have known, or was reckless in not knowing that the Class Refrigerators were defective, posed a safety hazard, would fail prematurely, and were not suitable for their intended use.

94.     Whirlpool was under a duty to Plaintiff and the California Subclass members to disclose the defective nature of the Class Refrigerators and the Defect because:

     a.     Whirlpool knew of but actively concealed the Defect from Plaintiff and the California Subclass;

     b.     Whirlpool was in a superior and exclusive position to know the true facts about the Defect, which poses safety hazards and affects the central functionality of the refrigerators, and Plaintiff and the Subclass members could not reasonably have been expected to discover that the Class Refrigerators contained the Defect until it manifested, which Whirlpool knew; and

     c.     Whirlpool made partial representations regarding the reliability, safety, and quality but suppressed facts regarding the Defect.

95.     The facts that Whirlpool misrepresented to and concealed from Plaintiff and the other California Subclass members are material because a reasonable consumer would have considered them to be important in deciding whether to purchase their Class Refrigerators or pay a lesser price for them.

96.     The Defect poses a safety risk and affects the central functionality of a Refrigerator because it renders essential functions of the refrigerator completely useless.

97.     In failing to disclose the material Defect, Whirlpool has knowingly and intentionally concealed material facts in breach of its duty to disclose.

98.     Plaintiff Guerrero and the California Subclass have suffered injury in fact and actual damages resulting from Whirlpool's material misrepresentations and omissions, including by paying an inflated purchase price for their Class Refrigerators and incurring additional out-of-pocket expenses to deal with the Defect. Had Plaintiff Guerrero and the Subclass known about the defective nature of the Class Refrigerators and the Defect, they would not have purchased their Class Refrigerators or would have paid less in doing so.

99.     As a direct and proximate result of Whirlpool's unfair and deceptive conduct, therefore, Plaintiff and the California Subclass members have been harmed.

100.     Pursuant to Cal. Civ. Code § 1782(a), on November 10, 2023, Plaintiff Guerrero sent a demand letter to Whirlpool notifying it of its CLRA violations and providing it with an opportunity to correct its business practices. Whirlpool did not correct its business practices. Accordingly, Plaintiff Guerrero on behalf of himself and the California Subclass, seeks monetary relief, including for actual, restitutionary, and punitive damages under the CLRA.

101.     Pursuant to Cal. Civ. Code § 1780(a), Plaintiff Guerrero, individually and on behalf of the California Subclass, seeks injunctive relief for Whirlpool's violation of the CLRA.

102.     Additionally, pursuant to Cal. Civ. Code §§ 1780 and 1781, Plaintiff Guerreo, individually and on behalf of the California Subclass, seeks compensatory and punitive damages under the CLRA and to recover attorneys' fees and costs.

103.     Plaintiff's CLRA venue declaration is attached as Exhibit A to this complaint in accordance with Cal. Civ. Code § 1780(d).

## COUNT II
### Violation of the California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200–17210
### Plaintiff Guerrero Individually and on Behalf of the California Subclass

104.     Plaintiffs reallege and incorporate by reference all preceding and succeeding

allegations as though fully set forth herein.

105.    Plaintiff Guerrero brings this cause of action individually and on behalf of the California Subclass.

106.    The UCL broadly proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

**Unlawful Conduct**

107.    Whirlpool's conduct is unlawful, in violation of the UCL, because, as set forth herein, it violates the Song–Beverly Consumer Warranty Act, the MMWA, the FAL, and the CLRA.

**Unfair Conduct**

108.    Whirlpool's conduct is unfair because it violated California public policy, legislatively declared in the Song–Beverly Consumer Warranty Act, which requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. The Defect renders the Class refrigerators unsafe, unreliable, and inoperable.

109.    Whirlpool acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

  a.    Knowingly selling Plaintiff Guerrero and California Subclass members Class Refrigerators with the Defect;

  b.    Directing and furnishing replacement parts it knew would not adequately remedy the Defect, and repairing defective parts with more defective parts and otherwise failing to adequately remedy the Defect during the warranty period;

  c.    Refusing to repair or replace the Class Refrigerators when the known Defect manifested outside the warranty period;

d.   Failing to exercise adequate quality control and due diligence over the Class Refrigerators before placing them on the market; and

e.   Failing to acknowledge the scope and severity of the Defect, which poses safety concerns, refusing to acknowledge the Class Refrigerators are defective, and failing to provide adequate relief.

110.   The gravity of the harm resulting from Whirlpool's unfair conduct outweighs any potential utility of the conduct. The practice of selling defective Class Refrigerators without providing an adequate remedy to cure the Defect harms the public at large and is part of a common and uniform course of wrongful conduct.

111.   There are reasonably available alternatives that would further Whirlpool's business interests of increasing sales and preventing false warranty claims. For example, Whirlpool could have: (a) acknowledged the Defect and provided a permanent, effective fix for the Defect; and/or (b) disclosed the Defect prior to prospective consumers' purchases.

112.   The harm from Whirlpool's unfair conduct was not reasonably avoidable by consumers. The Class Refrigerators all suffer from the latent Defect, and Whirlpool has failed to disclose it. Plaintiff and California Subclass members did not know of, and had no reasonable means of discovering, the Defect.

**Fraudulent Conduct**

113.   Whirlpool's conduct is fraudulent in violation of the UCL. Whirlpool's fraudulent acts include knowingly and intentionally concealing from Plaintiff and the California Subclass members the existence of the Defect and falsely marketing and misrepresenting the Class Refrigerators as being functional, reliable, and safe.

114.    Whirlpool's misrepresentations and omissions alleged herein caused Plaintiff and the California Subclass members to purchase their Class Refrigerators or pay more than they would have had Whirlpool not misrepresented the refrigerators or disclosed the Defect.

115.    At all relevant times, Whirlpool had a duty to disclose the Defect because it had superior and exclusive knowledge of the Defect, which affects the central functionality of the refrigerator and creates a safety risk, and because Whirlpool made partial representations about the reliability, quality, and safety of the Class Refrigerators but failed to disclose the Defect.

116.    Accordingly, Plaintiff Guerrero and California Subclass members have suffered injury in fact, including lost money or property, as a result of Whirlpool's unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiff Guerrero and California Subclass members would not have purchased their Class Refrigerators at the prices they paid or would not have purchased them at all.

117.    Plaintiff Guerrero seeks appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Whirlpool from continuing its unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiff and California Subclass members any money Whirlpool acquired by its unfair competition, including restitution. Plaintiff also seeks reasonable attorneys' fees and expenses under applicable law.

**COUNT III**
**Violation of the California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**Plaintiff Guerrero Individually and on Behalf of the California Subclass**

118.    Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

119.    Plaintiff Guerrero brings this claim on behalf of himself and the California Subclass.

120.    Cal. Bus. & Prof. Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

121.    Whirlpool caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care, Whirlpool should have known to be untrue and misleading to consumers, including Plaintiffs and other class members.

122.    Whirlpool has advertised to consumers that the Class Refrigerators are of high quality, reliable, and safe and contain functioning ice makers/dispensers and water dispensers that are expected to work well into the Class Refrigerators' life expectancy. As alleged herein, the Class Refrigerators are not of the quality or standard as advertised to the public, and Whirlpool knew this at the time of sale.

123.    Whirlpool has violated Section 17500 because its misrepresentations and omissions regarding the safety, reliability, functionality, and performance of the Class Refrigerators were material and likely to deceive a reasonable consumer.

124.    At all relevant times, Whirlpool had a duty to disclose the Defect because it had superior and exclusive knowledge of the Defect, which affects the functionality of the Class Refrigerators and creates a safety risk for the public, and because Whirlpool made partial

representations about the reliability, quality, and safety of the Class Refrigerators but failed to fully disclose the Defect.

125.    As a direct and proximate result of Whirlpool's acts, Plaintiff Guerrero and the California Subclass members have suffered injuries in fact, including the loss of money or property, resulting from Whirlpool's unfair, unlawful, and/or deceptive practices. In purchasing the Class Refrigerators, Plaintiff and the other Class members relied on Whirlpool's misrepresentations and/or omissions with respect to the safety and reliability of the Class Refrigerators. Whirlpool's representations were untrue because it distributed Class Refrigerators with the Defect, and Whirlpool did not provide adequate remedies since it is unable to replace Class Refrigerators with comparable products and is not offering cash refunds. Had Plaintiff and the other class members known this, they would not have purchased the Class Refrigerators or would not have paid as much for them. Accordingly, Plaintiff and the class members did not receive the benefit of their bargain.

126.    Whirlpool's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

127.    Plaintiffs, individually and on behalf of the other class members, request that the Court enter such orders or judgments as may be necessary to enjoin Whirlpool from continuing its unfair, unlawful, and/or deceptive practices, and restore to Plaintiffs and the other class members any money Whirlpool acquired by unfair competition, including restitution and/or disgorgement, and for such other applicable relief provided by the FAL.

**COUNT IV**
**Violations of Song–Beverly Consumer Warranty Act**
**For Breach of Express Warranty**
**Cal. Civ. Code §§ 1790–1795.8**
**Plaintiff Guerrero Individually and on Behalf of the California Subclass**

128.    Plaintiff Guerrero incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

129.    Plaintiff Guerrero brings this claim individually and on behalf of the California Subclass who purchased a Class Refrigerator for personal, family or household Purposes.

130.    Plaintiff Guerrero and the California Subclass members who purchased the Class Refrigerators are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

131.    The Class Refrigerators are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

132.    Whirlpool is a "manufacturer" of the Class Refrigerators within the meaning of Cal. Civ. Code § 1791(j).

133.    Whirlpool made express warranties to Plaintiff Guerrero and the California Subclass members within the meaning of Cal. Civ. Code §§ 1791.2 & 1793.

134.    Whirlpool breached these express warranties by selling defective Class Refrigerators that required repair or replacement within the applicable warranty period and failing to adequately repair the alleged Defect.

135.    As a direct and proximate result of Defendant's breach of its express warranties, Plaintiff Guerrero and the California Subclass members received goods in a condition that substantially impairs their value to Plaintiff and the other Subclass members. Plaintiff and the California Subclass members have been damaged as a result of, *inter alia*, overpaying for the Class Refrigerators, the diminished value of the Class Refrigerators, the Class Refrigerators'

malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

136.    Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff Guerrero and the California Subclass members who purchased for personal, family, or household purposes are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Refrigerators or the overpayment or diminution in value of their Class Refrigerators as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect.

137.    Plaintiff Guerrero's Demand Letter sent to Whirlpool on November 10, 2023, notified Whirlpool of its class-wide breaches of its express warranties and demanded adequate class-wide relief. Whirlpool has received adequate notice of its breaches and opportunity to cure, but it has failed to do so.

138.    Pursuant to Cal. Civ. Code § 1794(d), (e), Plaintiff Guerrero and the California Subclass members are entitled to reasonable costs and attorneys' fees.

**COUNT V**
**Violations of Song–Beverly Consumer Warranty Act**
**For Breach of Implied Warranty**
**Cal. Civ. Code §§ 1790–1795.8**
**Plaintiff Guerrero Individually and on Behalf of the California Subclass**

139.    Plaintiff Guerrero incorporates by reference all preceding and succeeding allegations as though fully set forth herein.

140.    Plaintiff Guerrero brings this claim individually and on behalf of the California Subclass who purchased for personal, family, or household purposes.

141.    Plaintiff Guerrero and the California Subclass members who purchased the Class Refrigerators are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

142.    The Class Refrigerators are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

143.    Defendant is a "manufacturer" of the Class Refrigerators within the meaning of Cal. Civ. Code § 1791(j).

144.    Defendant impliedly warranted to Plaintiff Guerrero and the California Subclass members that Class Refrigerators were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792.

145.    Section 1791.1(a) provides that: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods must meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

146.    The Defect in the Class Refrigerators is present in them when sold and is substantially certain to manifest. The Class Refrigerators would not pass without objection in the appliance and refrigeration trade because the Defect causes all, or substantially all, of the Class Refrigerators to experience ice maker/dispenser failures, water dispenser failures, and/or control panel failures, and it causes a safety risk. The Defect thus affects the central functionality of the refrigerator, poses a safety risk, and causes increased maintenance costs.

147.    Because the Class Refrigerators are unfit for their ordinary purpose due to the Defect and because the Defect creates a safety risk to consumers, the Class Refrigerators are not fit for the ordinary purposes for which such refrigerators are used.

148.    Class Refrigerators are not adequately labeled because the labeling fails to disclose the Defect and does not advise the California Subclass members of the Defect.

149.    Any attempt by Defendant to disclaim its implied warranty obligations under the Song-Beverly Act is ineffective due to its failure to adhere to Sections 1792.3, 1792.4, and 1793. Those sections of the Civil Code provide, among others, that, in order to validly disclaim the implied warranty of merchantability, a manufacturer must "in simple and concise language" state each of the following: "(1) The goods are being sold on an 'as is' or 'with all faults' basis. (2) The entire risk as to the quality and performance of the goods is with the buyer. (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." Cal. Civ. Code § 1792.4(a). Defendant's attempted implied warranty disclaimer does not conform to these requirements.

150.    The Defect deprived Plaintiff Guerrero and the California Subclass members of the benefit of their bargain and have resulted in Class Refrigerators being worth less than what Plaintiff and other California Subclass members paid.

151.    As a direct and proximate result of Defendant's breach of its implied warranties, Plaintiff Guerrero and the California Subclass members received goods that contain a defect that substantially impairs their value. Plaintiff Guerrero and the California Subclass members have been damaged by the diminished value of the refrigerators, the refrigerators' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

152.    Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff Guerrero and the California Subclass members are entitled to damages and other legal and equitable relief, including, *inter alia*, benefit-of-the-bargain damages, overpayment or diminution in value of their Class Refrigerators, and reasonable attorneys' fees and costs.

153.    Plaintiff Guerrero's Demand Letter sent to Whirlpool on November 10, 2023, notified Whirlpool of its class-wide breaches of its implied warranties and demanded adequate class-wide relief. Whirlpool has received adequate notice of its breaches and opportunity to cure, but it has failed to do so.

## COUNT VI
### Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA)
### Fla. Stat. §§ 501.201–.213
### Plaintiff Costa Individually and on Behalf of the Florida Subclass

154.    Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

155.    Plaintiff Costa brings this cause of action individually and on behalf of the Florida Subclass.

156.    Plaintiff Costa and the Florida Subclass members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

157.    Whirlpool engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

158.    The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

159.    Whirlpool's acts and practices, described herein, are unfair in violation of Florida law because it violates Florida public policy and warranty laws requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes.

160.    Whirlpool acted in an unfair, deceptive, unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner, in at least the following respects:

        a.   Whirlpool promoted and sold Class Refrigerators it knew were defective;

b. Whirlpool failed to disclose the Defect;

c. Whirlpool represented through advertising that Class Refrigerators possess particular qualities and functions that were inconsistent with Whirlpool's actual knowledge of them;

d. Whirlpool failed to make repairs or made repairs and provided replacements that caused Plaintiff and the Florida Subclass members to experience repeated instances of failure; and

e. Whirlpool minimized the scope and severity of the problems with the Class Refrigerators, refused to acknowledge that they are defective, and failed to provide adequate relief to consumers.

161. The gravity of harm resulting from Whirlpool's unfair conduct outweighs any potential utility. The practice of selling defective Class Refrigerators without providing an adequate remedy to cure the defect harms the public at large and is part of a common and uniform course of wrongful conduct.

162. The harm from Whirlpool's conduct was not reasonably avoidable by consumers. Even after receiving a large volume of consumer complaints, Whirlpool did not disclose the Defect. Plaintiff Costa and Florida Subclass members did not know of, and had no reasonable means of discovering, that Class Refrigerators are defective.

163. Whirlpool also engaged in deceptive trade practices in violation of Florida law by promoting and advertising the Class Refrigerators' as having reliable and durable ice makers/dispensers and water dispensers while willfully failing to disclose and actively concealing their true defective nature.

164. Whirlpool's deceptive and unfair trade practices, including its misrepresentations

and omissions described herein, were likely to mislead consumers acting reasonably under the circumstances.

165.    Plaintiff Costa and the Florida Subclass members suffered ascertainable losses as a direct and proximate result of Whirlpool's unfair and deceptive acts or practices. Had Plaintiff Costa and the Florida Subclass members known that the Class Refrigerators contained the Defect, they would not have purchased the Class Refrigerators or would have paid significantly less for the them. Among other injuries, they overpaid for their Class Refrigerators, and their Class Refrigerators suffered a diminution in value.

166.    Plaintiff Costa and the Florida Subclass members are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and reasonable attorneys' fees under Fla. Stat. § 501.2105(1).

167.    Plaintiffs Costa also seeks an order enjoining Whirlpool's unfair and deceptive acts or practices pursuant to Fla. Stat. § 501.211, and any other just and proper relief available under the FDUTPA.

## COUNT VII
**Breach of Implied Warranty of Merchantability (Florida)**
**Fla. Stat. §§ 672.314 and 680.212**
**Plaintiff Costa Individually and on Behalf of the Florida Subclass**

168.    Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

169.    Plaintiff Costa brings this cause of action individually and on behalf of the members of the Florida Subclass.

170.    Whirlpool is and was at all relevant times a "merchant" with respect to refrigerators under Fla. Stat. § 672.104(1) and a "seller" of refrigerators under § 672.103(1)(d ).

171.    The Class Refrigerators are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672.105(1).

172.    A warranty that the Class Refrigerators were in merchantable condition and fit for the ordinary purpose for which refrigerators are used is implied by law under Fla. Stat. § 672.314.

173.    Whirlpool knew or had reason to know of the specific use for which the Class Refrigerators were purchased. Whirlpool directly sold and marketed Class Refrigerators to customers through its own website as well as authorized retailers, like those from whom Plaintiff Costa and the Florida Subclass members bought their Class Refrigerators. Whirlpool knew that the Class Refrigerators would and did pass unchanged from the authorized retailers to Plaintiff Costa and the Florida Subclass members, with no modification to the defective Class Refrigerators.

174.    Whirlpool provided Plaintiff Costa and the Florida Subclass members with an implied warranty that the Class Refrigerators and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

175.    This implied warranty included, among other things: (i) a warranty that the Class Refrigerators that were manufactured, supplied, distributed, and/or sold by Whirlpool were safe and reliable; and (ii) a warranty that the Class Refrigerators would be fit for their intended use.

176.    Contrary to the applicable implied warranties, the Class Refrigerators at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Class Refrigerators were and are defective at the time of sale and thereafter as more fully described above. Whirlpool knew of this defect at the time the sale transactions occurred.

177.    As a result of Whirlpool's breach of the applicable implied warranties, Plaintiff Costa and the Florida Subclass members suffered an ascertainable loss of money, property, and/or value of their Class Refrigerators. Additionally, as a result of the Defect, Plaintiff Costa and the

Florida Subclass members were harmed and suffered actual damages in that the Class Refrigerators are substantially certain to fail before their expected useful life has run.

178.    Whirlpool's actions, as complained of herein, breached the implied warranty that the Class Refrigerators were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

179.    Plaintiff Costa and the Florida Subclass members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Whirlpool's conduct described herein.

180.    Plaintiff Costa and the Florida Subclass members were not required to notify Whirlpool of the breach because it would have been futile. Nevertheless, Plaintiff Costa served Whirlpool with a demand letter notifying it of its breaches of implied warranty on January 30, 2024. Whirlpool was also on notice of the Defect, as alleged above. Whirlpool has received adequate notice of its breaches and opportunity to cure, but it has failed to do so.

181.    Plaintiffs and Class members are intended third-party beneficiaries of contracts between Defendant and its authorized retailers, and specifically, of Defendant's implied warranties. Defendant's retailers and distributors are intermediaries between Defendant and consumers. These intermediaries sell Refrigerators to consumers and are not, themselves, consumers of Refrigerators, and therefore have no rights against Defendant with respect to Plaintiffs' and Class members' purchases of Refrigerators. Defendant's warranties were designed for the benefit of consumers who purchased Refrigerators.

182.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the implied warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. Whirlpool's warranties were adhesive and did

not permit negotiations. Whirlpool possessed superior and exclusive knowledge of the Defect, which is a latent defect, prior to offering the refrigerators for sale. Whirlpool concealed and did not disclose this Defect, and Whirlpool did not remedy the Defect prior to sale (or afterward).

183.    Additionally, Whirlpool's attempts to disclaim or limit the implied warranty were ineffectual pursuant to Fla. Stat. § 672.316.

184.    As a direct and proximate cause of Whirlpool's breach, Plaintiff Costa and the Florida Subclass members suffered damages and continue to suffer damages, including economic damages at the point of sale and diminution of value of their Class Refrigerators. Additionally, Plaintiff Costa and the Florida Subclass members have incurred or will incur additional economic damages, including for repairs.

185.    As a direct and proximate result of Whirlpool's breach of the implied warranty of merchantability, Plaintiff Costa and the North Carolina Subclass members have been damaged in an amount to be proven at trial.

<u>**COUNT VIII**</u>
**Violations of the North Carolina Unfair and Deceptive Acts and Practices Act**
**(North Carolina UDAPA)**
**N.C. Gen. Stat. § 75-1.1, *et seq.***
**Plaintiff Robinson Individually and on Behalf of the North Carolina Subclass**

186.    Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

187.    Plaintiff Robinson brings this cause of action individually and on behalf of the North Carolina Subclass.

188.    Whirlpool sells refrigerators under the brand name KitchenAid.

189.    Whirlpool engaged in "commerce" as defined in § 75-1.1(b).

190.    The North Carolina UDAPA broadly prohibits "unfair or deceptive acts or practices

in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). Whirlpool willfully committed unfair or deceptive acts or practices in violation of North Carolina UDAPA.

191.    Whirlpool engaged in misleading, false, or deceptive acts that violated the North Carolina UDAPA as described below and alleged throughout the Complaint.

192.    By failing to disclose the Defect, by concealing the Defect, by marketing Class Refrigerators as safe, reliable, and of high quality and as having reliable key functions, such as an ice maker/dispenser and water dispenser, Whirlpool knowingly and intentionally misrepresented and omitted material facts in connection with the sale the Class Refrigerators. Whirlpool's misrepresentations and omissions had the tendency and capacity to deceive.

193.    Whirlpool's unfair and deceptive acts or practices occurred repeatedly in Whirlpool's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a safety risk on the public.

194.    Whirlpool knew that the Class Refrigerators suffered from an inherent, latent Defect, were defectively manufactured, and were not suitable for their intended use.

195.    Whirlpool knew or should have known that its conduct violated the North Carolina UDAPA.

196.    Plaintiff Robinson and the North Carolina Subclass Members reasonably relied on Whirlpool's misrepresentations and omissions of material facts in its advertisements of the Class Refrigerators and in the purchase of the Class Refrigerators.

197.    Had Plaintiff Robinson and the North Carolina Subclass Members known that the Class Refrigerators had the Defect, they would not have purchased the Class Refrigerators or would have paid less for them. Plaintiff Robinson and the North Carolina Subclass Members did not receive the benefit of their bargain as a result of Whirlpool's misconduct.

198.    Whirlpool owed to Plaintiff and the members of the North Carolina Subclass a duty to disclose the defect because (a) Whirlpool, with its exclusive and superior knowledge of the defect, affirmatively concealed material facts from them; or (b) Whirlpool has knowledge of the latent Defect, which renders functions that were the basis of the bargain inoperable, and Plaintiff and North Carolina Subclass Members did not know and could not discover through reasonable diligence; or (c) made incomplete representations regarding the quality, functions, and durability of the Class Refrigerators, while purposefully withholding material facts from Plaintiff and the North Carolina Subclass Members that contradicted these representations.

199.    The facts that Whirlpool omitted and concealed were material because they directly impacted the value of the Class Refrigerators purchased by Plaintiff Robinson and the North Carolina Subclass Members. The existence of and reliability of key functions, such as an ice maker/dispenser and water dispenser, and safety are material to Whirlpool's consumers. Whirlpool represented to Plaintiff Robinson and the North Carolina Subclass Members that they were purchasing refrigerators that had operable and reliable key functions, including ice maker/dispenser and water dispenser, when in fact their refrigerators suffer from the Defect, which in many cases necessitated costly, ineffective repairs.

200.    Plaintiff Robinson and the North Carolina Subclass Members suffered injury in fact to a legally protected interest. As a result of Whirlpool's conduct, Plaintiff Robinson and the North Carolina Subclass Members were harmed and suffered actual damages in the form of the diminished value of their refrigerators and/or paid for out-of-pocket repair expenses.

201.    As a direct and proximate result of Whirlpool's unfair or deceptive acts or practices, Plaintiff Robinson and the North Carolina Subclass Members suffered and will continue to suffer injury in fact and/or actual damages.

202.    Defendant's violations present a continuing risk to Plaintiff Robinson and the North Carolina Subclass Members as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

203.    Because Whirlpool's actions and conduct were willful, Plaintiff Robinson seeks an order for treble her actual damages, an order enjoining Whirlpool's unlawful acts, court costs, attorneys' fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat.§ 75-16.

**<u>COUNT IX</u>**
**Breach of Implied Warranty of Merchantability (North Carolina)**
**N.C. Gen. Stat. Ann. § 25-2-314 and 25-2A-212**
**Plaintiff Robinson Individually and on Behalf of the North Carolina Subclass**

204.    Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

205.    Plaintiff Robinson brings this cause of action individually and on behalf of the North Carolina Subclass.

206.    Whirlpool is and was at all relevant times a "merchant" with respect to refrigerators under N.C. Gen. Stat. § 25-2-104(1) and a "seller" of refrigerators under § 25-2-103(1)(d).

207.    The Class Refrigerators are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. § 25-2-105(1) and § 25-2A-103(1)(h).

208.    A warranty that the Class Refrigerators were in merchantable condition and fit for the ordinary purpose for which refrigerators are used is implied by law under N.C. Gen. Stat. § 25-2-314 and 25-2A-212.

209.    Whirlpool knew or had reason to know of the specific use for which the Class Refrigerators were purchased. Whirlpool directly sold and marketed Class Refrigerators to customers through its own website as well as authorized retailers, like those from whom Plaintiff

Robinson and the North Carolina Subclass members bought their Class Refrigerators. Whirlpool knew that the Class Refrigerators would and did pass unchanged from the authorized retailers to Plaintiff Robinson and the North Carolina Subclass members, with no modification to the defective Class Refrigerators.

210.    Whirlpool provided Plaintiff Robinson and the North Carolina Subclass members with an implied warranty that the Class Refrigerators and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

211.    This implied warranty included, among other things: (i) a warranty that the Class Refrigerators that were manufactured, supplied, distributed, and/or sold by Whirlpool were safe and reliable; and (ii) a warranty that the Class Refrigerators would be fit for their intended use.

212.    Contrary to the applicable implied warranties, the Class Refrigerators at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Class Refrigerators were and are defective at the time of sale and thereafter as more fully described above. Whirlpool knew of this defect at the time the sale transactions occurred.

213.    As a result of Whirlpool's breach of the applicable implied warranties, Plaintiff Robinson and the North Carolina Subclass members suffered an ascertainable loss of money, property, and/or value of their Class Refrigerators. Additionally, as a result of the Defect, Plaintiff Robinson and the North Carolina Subclass members were harmed and suffered actual damages in that the Class Refrigerators are substantially certain to fail before their expected useful life has run.

214.    Whirlpool's actions, as complained of herein, breached the implied warranty that the Class Refrigerators were of merchantable quality and fit for such use in violation of the Uniform Commercial Code and relevant state law.

215.    Plaintiff Robinson and the North Carolina Subclass members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Whirlpool's conduct described herein.

216.    Plaintiff Robinson and the North Carolina Subclass members were not required to notify Whirlpool of the breach because it would have been futile. Nevertheless, after filing a BBB complaint, Plaintiff Robinson communicated to Whirlpool the defective nature of her Refrigerator, yet Whirlpool informed her that it would not provide any coverage for the defect, *see supra* ¶ 26. Whirlpool was also on notice of the Defect, as alleged above.

217.    Plaintiffs and Class members are intended third-party beneficiaries of contracts between Defendant and its authorized retailers, and specifically, of Defendant's implied warranties. Defendant's retailers and distributors are intermediaries between Defendant and consumers. These intermediaries sell Refrigerators to consumers and are not, themselves, consumers of Refrigerators, and therefore have no rights against Defendant with respect to Plaintiffs' and Class members' purchases of Refrigerators. Defendant's warranties were designed for the benefit of consumers who purchased Refrigerators.

218.    In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Whirlpool to limit the implied warranty in a manner that would exclude or limit coverage for the Defect would be unconscionable. Whirlpool's warranties were adhesive and did not permit negotiations. Whirlpool possessed superior and exclusive knowledge of the Defect, which is a latent defect, prior to offering the refrigerators for sale. Whirlpool concealed and did not disclose this Defect, and Whirlpool did not remedy the Defect prior to sale (or afterward).

219.    Any attempt by Whirlpool to disclaim or otherwise limit the implied warranty of merchantability is not in compliance with N.C. Gen. Stat. § 25-2-316.

220.    As a direct and proximate cause of Whirlpool's breach, Plaintiff Robinson and the North Carolina Subclass members suffered damages and continue to suffer damages, including economic damages at the point of sale and diminution of value of their Class Refrigerators. Additionally, Plaintiff Robinson and the North Carolina Subclass members have incurred or will incur additional economic damages, including for repairs.

221.    As a direct and proximate result of Whirlpool's breach of the implied warranty of merchantability, Plaintiff Robinson and the North Carolina Subclass members have been damaged in an amount to be proven at trial.

## COUNT X
### Breach of Express Warranty
**On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, the State Subclasses**

222.    Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

223.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class, or, in the alternative, on behalf of the California, Florida, and North Carolina Subclasses under the laws of those states.

224.    Each of the aforementioned states has adopted the portions of the Uniform Commercial Code ("UCC") concerning warranty claims into its state statutory system.

225.    Whirlpool is a "merchant" as defined under the Uniform Commercial Code ("UCC").

226.    The Class Refrigerators are "goods" as defined under the UCC.

227.    Whirlpool provided all purchasers of the Class Refrigerators with the express warranties described herein, which became material parts of the bargain.

228.    Pursuant to UCC § 2-313, an affirmation of fact, promise, or description made by

the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation, promise, or description.

229.    Plaintiffs and each member of the Class formed contracts with Defendant at the time they purchased their Class Refrigerators. The terms of that contract include the Defendant's claims regarding the Refrigerators had reliable and key functions including a functional ice maker/dispenser and water dispenser, as described above. This product advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendant on the other.

230.    Whirlpool breached the terms of these contracts, including the express warranties, by failing to provide Class Refrigerators that provided the benefits advertised by Defendant—namely, Refrigerators that had reliable and functional ice makers/dispensers and water dispensers.

231.    In addition, Class Refrigerators are accompanied by a limited warranty for repair or replacement:

> For one year from the date of purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Whirlpool Corporation or Whirlpool Canada LP (hereafter "Whirlpool") will pay for Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion replace the product. In the event of product replacement, your appliance will be warranted for the remaining term of the original unit's warranty period.

232.    Defendant breached its warranty by selling to Plaintiffs and Class members Class Refrigerators with the Defect, which Defendant knew and knows, that makes the Class Refrigerators susceptible to failure within and just outside of the warranty period, and which causes the refrigerators' central functions to fail prematurely and well before the expiration of the refrigerators' useful life.

233.    Defendant further breached its warranty by failing to adequately repair and/or replace Plaintiffs' and other Class members' defective Class Refrigerators or parts necessary to adequately repair the Defect. Instead of an adequate repair, Defendant routinely provides inadequate repairs that result in subsequent failures and warrant additional repairs and result in expenses to consumers.

234.    Accordingly, Defendant's limited remedy of repair or replacement is an inadequate remedy under the terms of the warranty such that the warranty fails of its essential purpose.

235.    Any attempt by Defendant to disclaim or limit its express warranties is unconscionable and unenforceable under the circumstances here. Defendant knew or should have known that the Class Refrigerators are plagued by the Defect; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the Class Refrigerators; and the limited remedies in Defendant's warranty unreasonably favors Defendant and fail Plaintiffs' reasonable expectations concerning product performance.

236.    Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold a defective product without informing consumers about the Defect. Because Defendant had knowledge of the Defect and failed to disclose it prior to selling Class Refrigerators to Plaintiffs and Class members, and because Defendant knew that the Class Refrigerators were defective and likely to fail shortly after the warranties purportedly expired, but failed to disclose the Defects to Plaintiffs and the other Class members, and because the remedy provided for under the terms of Defendant's warranty is inadequate and fails of its essential purpose, the one year durational warranty limitation (and all other limitations) is unenforceable because it is both procedurally and substantively unconscionable. Accordingly, consumers who have experienced Class Refrigerator failures due to the Defect should not be precluded from bringing warranty

claims under Whirlpool's warranty.

237.    Any purported warranty limitations excluding or limiting (a) labor and costs of labor and (b) incidental and consequential damages, are also procedurally and substantively unconscionable and thus fail under U.C.C. § 2-302.

238.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

239.    Defendant was provided notice of these issues by complaints lodged by consumers—including Plaintiffs as described above—directly over the phone and on internet consumer complaint boards, and elsewhere—which appliance manufacturers like Defendant routinely monitor—and further through reports by repair technicians and/or others, and internal investigations that must have occurred to allow Defendant to address problems brought to them by customers.

240.    Plaintiffs sent demand letters to Whirlpool on November 10, 2023 (Guerrero) and January 30, 2024 (Costa), which specifically put Whirlpool on notice of its class-wide breaches of its express warranties and demanded adequate class-wide relief. Whirlpool has received adequate notice of its breaches and opportunity to cure, but it has failed to do so.

241.    As a direct and proximate cause of Whirlpool's breach, Plaintiffs and class members bought Class Refrigerators they otherwise would not have, overpaid for the Class Refrigerators, did not receive the benefit of their bargain, and their Class Refrigerators suffered a diminution in value and Whirlpool has not offered an adequate remedy.

**COUNT XI**
**Violation of the Magnuson-Moss Warranty Act (MMWA)**
**15 U.S.C. § 2301, *et seq.***
**By Plaintiffs Individually and on behalf of the Nationwide Class**

242.   Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

243.   This claim is brought by Plaintiffs individually and on behalf of the Nationwide class.

244.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. §§ 1332(a) and (d).

245.   15 U.S.C. 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written warranty.

246.   Plaintiffs and members of the class are "consumers" as defined in 15 U.S.C. § 2301(3).

247.   Whirlpool is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4)-(5).

248.   The Class Refrigerators constitute "consumer products" as defined in 15 U.S.C. § 2301(1).

249.   The Class Refrigerators are tangible personal property owned by Plaintiffs and members of the class.

250.   The Class Refrigerators were distributed in commerce.

251.   The Class Refrigerators are normally used for personal and/or household purposes in that they are used by individual persons for refrigeration of food and beverages, often in the home.

252.   Plaintiffs and members of the class are buyers of the Class Refrigerators and are

51

persons entitled to the terms of the warranties to enforce against Whirlpool the obligations of the warranties.

253.   Whirlpool was and is engaged in the business of making the Class Refrigerators, which are consumer products, and of making other consumer products, directly or indirectly available to consumers, including through its contracted distributors.

254.   As discussed herein, Whirlpool made express and implied warranties to Plaintiffs and class members with respect to the Class Refrigerators.

255.   The warranties made by Whirlpool pertained to consumer products costing the consumer more than five dollars. See 15 U.S.C. § 2302(e).

256.   Defendant provided Plaintiffs and Class members with "express warranties" as that term is defined by 15 U.S.C. § 2301(6).

257.   The terms of that contract include the Defendant's claims regarding the Refrigerators had reliable and key functions including a functional ice maker/dispenser and water dispenser, as described above. This product advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiffs and the members of the Class on the one hand, and Defendant on the other.

258.   As noted above, Whirlpool also provided an express limited warranty to all purchasers of Class Refrigerators.

259.   Plaintiffs and the Class members relied on these express warranties in Defendant's advertising and warranties as being a part of the bargain between the parties.

260.   Defendant provided Plaintiffs and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

261.   All conditions precedent to Defendant's liability under the contract have been

performed by Plaintiffs and the Class members.

262.    Whirlpool breached the terms of this contract, including the express and implied warranties with Plaintiffs and the Nationwide Class members, by failing to provide Class Refrigerators that provided the benefits advertised by Defendant—namely, Refrigerators that had reliable and functional ice makers/dispensers and water dispensers.

263.    Whirlpool breached its implied warranties with the members of the Class by failing to provide Class Refrigerators that were fit for their ordinary purposes and the purposes for which Defendant knew that Class members intended to use them, including reliable ice making/ dispensing and water dispensing, and by failing to provide Refrigerators that would pass without objection in the trade under their description.

264.    There is privity between Defendant, Plaintiffs and the members of the Nationwide Class by Defendant's direct warranties and/or because Plaintiffs and the Class were intended third-party beneficiaries of the implied warranty made by Defendant.

265.    Any efforts to limit the implied warranties in a manner that would exclude coverage of the Refrigerators is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Refrigerators is null and void.

266.    Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between the Defendant, on the one hand, and Plaintiffs and the other Class members, on the other.

267.    Any limitations on the warranties are substantively unconscionable. Defendant knew that the Class Refrigerators were defective and likely to fail shortly after the warranties purportedly expired. Defendant failed to disclose the Defects to Plaintiffs and the other Class members. Thus, Defendant's enforcement of the durational limitations on those warranties is

harsh, unconscionable and shocks the conscience.

268.     As a result of its breaches of express and implied warranties, Plaintiffs and the members of the Nationwide Class have been damaged in an amount to be proven at trial.

**COUNT XII**
**Unjust Enrichment/Quasi Contract**
**On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, the State Subclasses**

269.     Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

270.     Plaintiffs bring this claim on behalf of themselves and the Class.

271.     This claim is pleaded in the alternative to the other warranty-based claims set forth herein should the Court deem the warranty claims unenforceable.

272.     As a result of Defendant's material deceptive advertising, marketing and/or sale of its Class Refrigerators, Defendant was enriched at the expense of Plaintiffs and all other Nationwide Class members through their purchase of the Refrigerators, because the Refrigerators did not provide the benefits as represented.

273.     Whirlpool has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Whirlpool's misconduct alleged herein, Plaintiff and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Whirlpool, and that a reasonable consumer would expect. Specifically, Plaintiff and the Class members expected that when they purchased their Class Refrigerators, they would not be manufactured with defective wiring.

274.     Whirlpool has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and its withholding of benefits and unearned monies from Plaintiffs and the Class, at the expense of these parties.

275.     Equity and good conscience militate against permitting Whirlpool to retain these profits and benefits.

## COUNT XIII
## Common Law Fraud
**On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, the State Subclasses**

276.     Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

277.     Plaintiffs bring this case of action on behalf of themselves and the Nationwide Class against Whirlpool as there are no true conflicts among the states' laws of fraud. In alternative, Plaintiffs bring this claim on behalf of each of the State Subclasses against Whirlpool.

278.     Whirlpool manufactured, designed, advertised, and sold the Class Refrigerators in all 50 states. Whirlpool also drafted, distributed, and disseminated the same advertising materials in all 50 states, including on the website it maintains to advertise Class Refrigerators. Those materials misrepresented, failed to disclose, and omitted any mention of the Defect and its associated safety concern.

279.     Additionally, Whirlpool made other material misrepresentations of facts regarding the ice maker/dispenser and water dispenser and/or fraudulently concealed from and/or intentionally failed to disclose the Defect to Plaintiff and Class Members.

280.     Whirlpool knew that the Class Refrigerators suffered from an inherent defect, specifically that the wires running through the doors were made with a defective material, and thus were defectively designed and/or manufactured and were not suitable for their intended use. Whirlpool knew this at the time of sale.

281.     Whirlpool concealed from and failed to disclose to Plaintiffs and Class Members the defective nature of the Class Refrigerators.

282.    Whirlpool charged a premium for the falsely represented features in the Class Refrigerators.

283.    The Defect is latent and not something Plaintiffs and Class Members in the exercise of reasonable diligence could have discovered independently prior to purchase. The Defect is incapable of becoming exposed by reasonable inspection by purchasers.

284.    Whirlpool knew the omitted facts regarding the Defect were not known to or reasonably discoverable by Plaintiffs and Class Members.

285.    Whirlpool was under a duty to Plaintiffs and Class Members to disclose the defective nature of the Class Refrigerators because Whirlpool was in an exclusive and superior position to know the true state of facts about the Defect contained in the Class Refrigerators; intentionally and actively concealed the Defect; and made incomplete or partial representations regarding the Class Refrigerators while withholding material facts from Plaintiffs and the Class members.

286.    Whirlpool had the capacity, and did, deceive Plaintiffs and Class Members into believing that the Class Refrigerators they purchased were of high quality and had functional ice makers and water dispensers.

287.    The facts misrepresented, concealed, or not disclosed by Whirlpool to Plaintiffs and Class Members were material in that a reasonable person would have considered them to be important in deciding whether to purchase the Class Refrigerators, or pay a lesser price for them, and were likely to deceive a reasonable person. The misrepresented and omitted facts also affected the basic advertised functions of the Class Refrigerators. The Defect also poses a safety risk.

288.    Had Plaintiffs and Class Members known about the defective nature of the Class Refrigerators, they would not have purchased the Class Refrigerators or would have paid less for

them.

289.     Whirlpool misrepresented, concealed, or failed to disclose the true nature of the Defect contained in the Class Refrigerators to induce Plaintiffs and Class Members to act thereon. Plaintiffs and the other Class Members justifiably relied on Whirlpool's misrepresentations omissions to their detriment. This detriment is evident from Plaintiffs' and Class Members' purchases of the defective Class Refrigerators.

290.     Whirlpool continued to conceal the defective nature of the Class Refrigerators even after Plaintiffs and Class Members began to report the problems. Indeed, Whirlpool continues to conceal the true nature of the Defect today.

291.     As a direct and proximate result of Whirlpool's misconduct, Plaintiffs and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase the defective Class Refrigerators and obtain restitution or (b) affirm their purchase of the Class Refrigerators and recover damages.

## <u>COUNT XIV</u>
**Negligent Misrepresentation**
**On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, the State Subclasses**

292.     Plaintiffs reallege and incorporate by reference all preceding and succeeding allegations as though fully set forth herein.

293.     Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class. In alternative, Plaintiffs bring this claim on behalf of each of the State Subclasses against Whirlpool.

294.     As set forth herein, Whirlpool routinely and uniformly represented that the Class Refrigerators "key features" included reliable and functional ice maker/dispensers and water dispensers. To communicate these representations and to convince Plaintiffs and members of the

Classes, Defendant supplied information, including through its website, the website of its authorized retailers, its printed materials, its repair warranties, and its point-of-sale documentation. Defendant knew, or should have known, that this information was false and/or misleading and fraught with material omissions.

295.    The misrepresentations concerned material facts that influenced Plaintiffs' and members of the Class's decisions to purchase the Class Refrigerators.

296.    Defendant negligently made the misrepresentations and omissions with the understanding the Plaintiffs and Class members would rely on them.

297.    Plaintiffs and members of the Classes reasonably, justifiably, and detrimentally relied on the misrepresentations and omissions, and, as a direct and proximate result thereof, have and will continue to suffer damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully request that the Court certify the proposed Class, designate Plaintiffs as Class representatives, appoint the undersigned as Class Counsel, and enter an Order providing for the following:

a.) An Order that Whirlpool notify Class Refrigerator owners of the Defect;

b.) An Order permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

c.) Injunctive relief in the form of a recall or a free replacement/repair program;

d.) Equitable relief, including in the form of a buyback of the Class Refrigerators;

e.) Compensatory damages – including for overpayment at the point of sale to Plaintiffs and class members in an amount to be proven at trial;

f.) Compensating Class Refrigerator owners for incurred costs and/or labor to

repair the defective Class Refrigerators;

g.) Other costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

h.) An Order that Whirlpool correct its manufacturing process to ensure that all Class Refrigerators are manufactured with adequate materials and design;

i.) An Order that Whirlpool replace the defective Class Refrigerators or all such parts as are necessary to eliminate the defect or perform sufficient repair to correct the defect;

j.) An Order that Whirlpool cease the sale of Class Refrigerators and otherwise cease to engage in violations of state consumer protection laws.

k.) An Order requiring Whirlpool to pay both pre- and post- judgement interest on any amounts awarded;

l.) An award for reasonable attorneys' fees and costs as permitted by law; and

m.) An Order entering such other relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury for all claims so triable.


Dated: February 12, 2024                    Respectfully submitted,

**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**

*By: /s/ Scott M. Tucker*
Scott M. Tucker (Del. Bar No. 4925)
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
2711 Centerville Rd., Suite 201
Wilmington, DE 19808
Tel.: 302-656-2500
smt@chimicles.com

59

Timothy N. Mathews *(pro hac vice forthcoming)*
Zachary P. Beatty *(pro hac vice forthcoming)*
Marissa N. Pembroke *(pro hac vice forthcoming)*
**CHIMICLES SCHWARTZ KRINER &
DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Phone: 610-642-8500
Fax: 610-649-3633
tnm@chimicles.com
zpb@chimicles.com
mnp@chimicles.com

***Counsel for Plaintiffs and the proposed classes***