## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STACY COSTA, NATHANIEL GUERRERO, and MISSY ROBINSON, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | No. 1:24-cv-00188-MN |
| WHIRLPOOL CORPORATION, | |
| Defendant. | |
| LESLIE LAMANNA, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | No. 1:24-cv-00310-MN |
| WHIRLPOOL CORPORATION, | |
| Defendant. | |

## DEFENDANT WHIRLPOOL CORPORATION'S
## OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

**WHEELER TRIGG O'DONNELL LLP**

Andrew M. Unthank (*pro hac vice*)
Jennifer Simon (*pro hac vice*)
370 17th Street, Suite 4500
Denver, CO 80202
(303) 244-1800
unthank@wtotrial.com
simon@wtotrial.com

**DALTON & ASSOCIATES, P.A.**

Bartholomew J. Dalton, Esq. (#808)
Michael C. Dalton, Esq. (#6272)
1106 West 10th Street
Wilmington, DE 19806
(302) 652-2050
bdalton@dalton.law
mdalton@dalton.law

*Attorneys for Defendant Whirlpool Corporation*

Dated: May 21, 2024

i

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... iv

NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

SUMMARY OF ARGUMENT .......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

I.    PLAINTIFFS' ALLEGED FACTS ........................................................................ 2
      A.    Plaintiffs' refrigerator purchases and service issues .................................. 2
      B.    Plaintiffs' "Defect" theory ......................................................................... 3
      C.    Whirlpool's alleged knowledge of the Defect ............................................ 4
            1.    *The reviews mentioning the "Defect" are a tiny fraction of the total number of reviews* ......................................................... 4
            2.    *Post-sale reviews cannot support pre-sale knowledge* ................ 5
      D.    Whirlpool's alleged misrepresentations ...................................................... 5
      E.    Plaintiffs' claims ......................................................................................... 6

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT ..................................................................................................................... 7

II.   PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE WHIRLPOOL'S PRE-SALE KNOWLEDGE OF THE "DEFECT" ........................................... 7
      A.    Conclusory statements about the regular activities of a product manufacturer do not support an inference of knowledge ......................... 8
      B.    Consumer reviews alone are insufficient evidence of a manufacturer's knowledge ............................................................................. 9
      C.    The cited consumer reviews represent less than 0.1% of the total reviews, which are overwhelmingly positive ................................... 10

III.  PLAINTIFFS IDENTIFY NO actionable MISREPRESENTATIONS .......................... 11
      A.    Two of the statements are claims about reliability, which is recognized as puffery and not a misrepresentation ...................................... 11
      B.    Two of the statements are factually-true descriptions of the Class Refrigerators ........................................................................................... 13

IV.   WHIRLPOOL HAD NO DUTY TO DISCLOSE ......................................................... 14
      A.    Plaintiffs' omission-based fraud claims fail because Plaintiffs fail to plead a duty to disclose ........................................................................ 14
      B.    Failure to plead a duty to disclose also bars Plaintiffs' negligent misrepresentation claims ......................................................................... 18
      C.    Failure to plead a duty to disclose also bars Plaintiffs' consumer protection act claims ................................................................................. 18

V.      PLAINTIFFS' REFRIGERATORS ARE FIT FOR THEIR ORDINARY
        PURPOSE OF COOLING FOOD .................................................................. 19
        A.      Some Plaintiffs' implied warranty claims also fail because they lack
                privity with Whirlpool ......................................................................... 20

VI.     PLAINTIFFS' DEFECT IS NOT COVERED BY THE LIMITED WARRANTY ........ 22
        A.      Plaintiffs plead a design defect ............................................................. 22
        B.      The Defect did not manifest within one year ........................................ 23

VII.    PLAINTIFFS' RETENTION OF ANY BENEFIT IS NOT UNJUST ........................... 24

VIII.   MULTIPLE OF PLAINTIFFS' CLASS CLAIMS FAIL ................................................. 24
        A.      Plaintiffs lack standing to bring state claims on behalf of a nationwide
                class ....................................................................................................... 24
        B.      Plaintiffs do not meet the statutory requirements of the Magnuson Moss
                Warranty Act .......................................................................................... 25
        C.      The Tennessee Consumer Protection Act bars class actions .............................. 25

CONCLUSION ................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Americoach Tours, Inc. v. Detroit Diesel Corp.*,
No. 04-2016 B/V, 05-2067 B, 2005 WL 2335369 (W.D. Tenn. Sept. 23, 2005) .................... 21

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ..................................................................................... 12

*Argabright v. Rheem Mfg. Co.*,
201 F. Supp. 3d 578 (D.N.J. 2016) ........................................................................................... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................... 6

*Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N. C., Inc.*,
623 S.E.2d 334 (N.C. Ct. App. 2006) ....................................................................................... 21

*Beck v. FCA US LLC*,
273 F. Supp. 3d 735 (E.D. Mich. 2017) .................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................................... 6

*Berenblat v. Apple, Inc.*,
No. 08-4969 JF (PVT), 2010 WL 1460297, (N.D. Cal. Apr. 9, 2010) ....................................... 9

*Bonham v. Wolf Creek Acad.*,
767 F. Supp. 2d 558 (W.D.N.C. 2011) ..................................................................................... 18

*Buck v. Hampton Tp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006) ........................................................................................................ 4

*Burkhart v. Wells Fargo Bank W., N.A.*,
No. E2006-01402-COA-R3CV, 2007 WL 1836850 (Tenn. App. June 27, 2007) ................... 18

*Canal Elec. Co. v. Westinghouse Elec. Co.*,
973 F.2d 988 (1st Cir. 1992) ..................................................................................................... 23

*Chaurasia v. Gen. Motors Corp.*,
126 P.3d 165 (Ariz. Ct. App. 1st Div. 2006) ........................................................................... 20

*Cheatham v. ADT Corp.*,
161 F. Supp. 3d 815 (D. Ariz. 2016) ........................................................................................ 12

*Chrisman v. Hill Home Dev., Inc.*,
978 S.W.2d 535 (Tenn. 1998) ................................................................................................... 15

*Cleary v. Philip Morris Inc.*,
   656 F.3d 511 (7th Cir. 2011) ........................................................................... 24

*Coba v. Ford Motor Co.*,
   932 F.3d 114 (3d Cir. 2019) ............................................................................ 22

*Comer v. Person Auto Sales, Inc.*,
   368 F. Supp. 2d 478 (M.D.N.C. 2005) ............................................................ 15

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016) .............................................................................. 6

*Connick v. Suzuki Motor Co., Ltd.*,
   675 N.E.2d 584 (Ill. 1996) ............................................................................... 14

*Czuchaj v. Conair Corp.*,
   No. 13-CV-1901-BEN RBB, 2014 WL 1664235 (S.D. Cal. Apr. 18, 2014) ......... 15

*Dack v. Volkswagen Grp. of Am.*,
   565 F. Supp. 3d 1135 (W.D. Mo. 2021) ........................................................... 20

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ......................................................................... 14

*Daugherty v. Am. Honda Motor Co.*,
   51 Cal. Rptr. 3d 118 (2006) ...................................................................... 13, 14

*Daugherty v. Am. Honda Motor Co., Inc.*,
   51 Cal. Rptr. 3d 118 (Cal. App. 2d Dist. 2006), as modified (Nov. 8, 2006) .......... 16

*Dawson v. Gen. Motors LLC*,
   No. CV 19-8680, 2019 WL 3283046  (D.N.J. July 22, 2019) .............................. 10

*Diaz v. FCA US LLC*,
   No. 21-CV-00906-EJW, 2022 WL 4016744 (D. Del. Sept. 2, 2022) ............. 9, 22, 24

*Diaz*,
   2023 WL 6160560 ............................................................................................ 8

*Dow Chem. Co. v. Mahlum*,
   114 Nev. 1468, 970 P.2d 98 (1998) ................................................................. 15

*Dugan v. Vlcko*,
   307 F. Supp. 3d 684 (E.D. Mich. 2018) ........................................................... 18

*Duncan v. Savannah, LLC*,
   637 S.W.3d 633 (E.D. Mo. Ct. App. 2021) ....................................................... 18

*Dyson, Inc. v. Garry Vacuum, LLC*,
   No. CV-10-01626 MMM (VBKx), 2011 WL 13268002 (C.D. Cal. Jan. 4, 2011) ........ 13

*EP Henry Corp. v. Cambridge Pavers, Inc.*,
　No. 17-1538 (JBS/KMW), 2017 WL 4948064 (D.N.J. Oct. 31, 2017) ................................... 12

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*,
　810 F. App'x 389 (6th Cir. 2020) ............................................................. 15

*Faber v. CIOX Health, LLC*,
　No. 16-CV-02337-STA-CGC, 2017 WL 5957206 (W.D. Tenn. Sept. 29, 2017), aff'd, 944
　F.3d 593 (6th Cir. 2019) ...................................................................... 25

*Fillinger v. Lerner Sampson & Rothfuss*,
　624 Fed. Appx. 338 (6th Cir. 2015) .......................................................... 17

*Frederico v. Home Depot*,
　507 F.3d 188 (3d Cir. 2007) ................................................................. 17

*Freeman Indus., LLC v. Eastman Chem. Co.*,
　172 S.W.3d 512 (Tenn. 2005) ................................................................. 24

*Garner v. Glob. Plasma Sols. Inc.*,
　590 F. Supp. 3d 738 (D. Del. 2022) .......................................................... 12

*Garrett-Alfred v. Facebook, Inc.*,
　540 F. Supp. 3d 1129 (M.D. Fla. 2021) ....................................................... 15

*GES, Inc. v. Corbitt*,
　21 P.3d 11 (Nev. 2001) ...................................................................... 15

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
　525 Fed. Appx. 94 (3d Cir. 2013) ............................................................ 23

*Gould v. M & I Marshall & Isley Bank*,
　860 F. Supp. 2d 985 (D. Ariz. 2012) ......................................................... 14

*Granillo v. FCA US LLC*,
　No. CV 16-153 (FLW)(DEA), 2016 WL 9405772 (D.N.J. Aug. 29, 2016) ............................. 9

*Gregorio v. Ford Motor Co.*,
　522 F. Supp. 3d 264 (E.D. Mich. 2021) ....................................................... 10

*Haugland v. Winnebago Indus.*,
　327 F. Supp. 2d 1092 (D. Ariz. 2004) ........................................................ 20

*Herron v. Best Buy Co. Inc.*,
　924 F. Supp. 2d 1161 (E.D. Cal. 2013) ....................................................... 17

*Hodsdon v. Mars, Inc.*,
　162 F. Supp. 3d 1016 (N.D. Cal. 2016), aff'd, 891 F.3d 857 (9th Cir. 2018) ................... 19

*In re Caterpillar, Inc., C13 and C15 Engine Prods Liab. Litig.*,
　No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236 (D.N.J. July 29, 2015) ............................. 14

*In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litig.*,
   No. 12-169, 2013 WL 5503308 (D.N.J. Oct. 2, 2013) ........................................................... 25

*In re Soc. Media Adolescent Addiction/Pers.Inj. Prods. Liab. Litig.*,
   No. 4:22-MD-03047-YGR, 2024 WL 1786290 (N.D. Cal. Apr. 15, 2024) ............................ 18

*In re TJX Companies Retail Sec. Breach Litig.*,
   524 F. Supp. 2d 83 (D. Mass. 2007), aff'd in part, 564 F.3d 489 (1st Cir. 2009), as amended on
   reh'g in part (May 5, 2009) ................................................................................................... 18

*In re Wellbutrin XL Antitrust Litig.*,
   260 F.R.D. 143 (E.D. Pa. 2009) ............................................................................................. 24

*iRecycleNow.com v. Starr Indem. & Liab. Co.*,
   674 Fed. Appx. 161 (3d Cir. 2017) ........................................................................................ 24

*Johnson v. FCA US LLC*,
   No. 20-CV-12690, 2024 WL 896568 (E.D. Mich. Mar. 1, 2024) ......................................... 22

*Kovalev v. Lidl US, LLC*,
   647 F. Supp. 3d 319 (E.D. Pa. 2022) ..................................................................................... 12

*Kuehn v. Stanley*,
   91 P.3d 346 (Ariz. Ct. App. 2004) ......................................................................................... 18

*Lee v. Samsung Elecs. Am., Inc.*,
   No. 4:21-CV-1321, 2022 WL 4243957  (S.D. Tex. Sept. 13, 2022) ...................................... 19

*Loomis v. Slendertone Distrib., Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019) .................................................................................. 12

*MacDonald v. Thomas M. Cooley Law Sch.*,
   724 F.3d 654 (6th Cir. 2013) ................................................................................................. 14

*Maugain v. FCA US LLC*,
   No. CV 22-116-GBW, 2023 WL 1796113  (D. Del. Feb. 7, 2023) .......................................... 8

*Melnick v. TAMKO Bldg. Prods., Inc.*,
   469 F. Supp. 3d 1082 (D. Kan. 2020) .................................................................................... 21

*Oliver v. Funai Corp., Inc.*,
   No. 14-CV-04532, 2015 WL 9304541,  (D.N.J. Dec. 21, 2015) .............................................. 9

*Ontario Hydro v. Zallea Sys., Inc.*,
   569 F. Supp. 1261 (D. Del. 1983) ......................................................................................... 14

*Pearson v. Garrett-Evangelical Theological Seminary, Inc.*,
   790 F. Supp. 2d 759 (N.D. Ill. 2011) ..................................................................................... 18

*Peri & Sons Farms, Inc. v. Jain Irr., Inc.*,
   933 F. Supp. 2d 1279 (D. Nev. 2013) .................................................................................... 15

*Peruto v. TimberTech Ltd.*,
   126 F. Supp. 3d 447 (D.N.J. 2015) ......................................................... 18

*Poole v. Nevada Auto Dealership Investments, LLC*,
   449 P.3d 479 (Nev. App. 2019) ................................................................ 7

*Pop v. LuliFama.com LLC*,
   No. 8:22-CV-2698-VMC-JSS, 2024 WL 1194485 (M.D. Fla. Mar. 20, 2024) ...................... 18

*Punian v. Gillette Co.*,
   No. 14-CV-05028-LHK, 2015 WL 4967535 (N.D. Cal. Aug. 20, 2015)................................ 7

*Punian v. Gillette Co.*,
   No. 14-CV-05028-LHK, 2016 WL 1029607 (N.D. Cal. Mar. 15, 2016) ............................... 13

*Rife v. Newell Brands, Inc.*,
   632 F. Supp. 3d 1276 (S.D. Fla. 2022) ....................................................... 21

*Rodriguez v. Ford Motor Co.*,
   596 F. Supp. 3d 1050 (N.D. Ill. 2022) ....................................................... 21

*Roe v. Ford Motor Co.*,
   No. 2:18-CV-12528-LJM-APP, 2019 WL 3564589 (E.D. Mich. Aug. 6, 2019) ..................... 11

*Rossi v. Whirlpool Corp.*,
   No. 2:12-CV-00125, 2013 WL 5781673 (E.D. Cal. Oct. 25, 2013)........................................ 20

*Rowland v. Bissell Homecare, Inc.*,
   73 F.4th 177 (3d Cir. 2023) ................................................................. 25

*S & J, Inc. v. McLoud & Co., L.L.C.*,
   108 S.W.3d 765 (S.D. Mo. Ct. App. 2003) ................................................... 24

*Schechter v. Hyundai Motor Am.*,
   No. CV 18-13634 (FLW), 2019 WL 3416902 (D.N.J. July 29, 2019).................................... 15

*Sloan v. Gen. Motors LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. 2018) ....................................................... 10

*Smallman v. MGM Resorts Intl.*,
   638 F. Supp. 3d 1175 (D. Nev. 2022) ....................................................... 18

*Smith v. Ford Motor Co.*,
   462 F. App'x 660 (9th Cir. 2011) ........................................................... 13

*Smith v. Gen. Motors LLC*,
   988 F.3d 873 (6th Cir. 2021) ....................................................... 8, 9, 10, 16

*Smith-Brown v. Ulta Beauty, Inc.*,
   No. 18 C 610, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019)..................................... 19

*SonicSolutions Algae Control, LLC v. Diversified Power Intl., LLC*,
    No. CV 21-30068-MGM, 2024 WL 1043001 (D. Mass. Mar. 8, 2024) ................................. 14

*Sosenko v. LG Elecs. U.S.A., Inc.*,
    No. 819CV00610JLSADS, 2019 WL 6118355 (C.D. Cal. Aug. 29, 2019) ........................... 19

*Stearns v. Select Comfort Retail Corp.*,
    No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ................................................ 13

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................................................... 20

*Tai-Si Kim v. Kearney*,
    838 F. Supp. 2d 1077 (D. Nev. 2012) .................................................................................... 15

*Tatum v. Chrysler Grp. LLC*,
    No. 10-CV-4269, 2011 WL 1253847 (D.N.J. Mar. 28, 2011) ................................................ 12

*Toca v. Tutco, LLC*,
    430 F. Supp. 3d 1313 (S.D. Fla. 2020) .................................................................................. 21

*Tomek v. Apple Inc.*,
    636 F. App'x 712 (9th Cir. 2016) ............................................................................................ 7

*TransPetrol, Ltd. v. Radulovic*,
    764 So. 2d 878 (Fla. 4th DCA 2000) ..................................................................................... 14

*Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*,
    No. 2004-CV-11836-RCL, 2006 WL 8445725 (D. Mass. Jan. 31, 2006) ............................. 14

*U.S. v. Colton*,
    231 F.3d 890 (4th Cir. 2000) ................................................................................................. 16

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
    249 S.W.3d 301 (Tenn. 2008) ................................................................................................ 25

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) ................................................................................................. 15

*Williams v. United Techs. Corp.*,
    No. 2:15-CV-04144-NKL, 2015 WL 7738370 (W.D. Mo. Nov. 30, 2015) ........................... 14

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ............................................................................................... 10

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ....................................................................................... 7, 8, 9

*Wolph v. Acer Am. Corp.*,
    No. C 09-01314 JSW, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) ................................. 16

*Zine v. Chrysler Corp.*,
   600 N.W.2d 384 (Mich. App. 1999) ................................................................ 7

*Zubres Radiology v. Providers Ins. Consultants*,
   276 S.W.3d 335 (W.D. Mo. Ct. App. 2009) .................................................. 14

**OTHER AUTHORITIES**

Ariz. Rev. Stat. Ann. § 47-2314 ..................................................................... 19

Cal. Civ. Code §§ 1790–1795.8 ..................................................................... 19

Fla. Stat. §§ 672.314 and 680.212 ................................................................. 19

Ill. Comp. Stat. § 5/2-314 .............................................................................. 19

Mass. Gen. Laws ch. 106, § 2-314 ................................................................ 19

Mich. Comp. Laws § 440.2314 ...................................................................... 19

Mo. Rev. Stat. § 400.2-314 ............................................................................ 19

N.C. Gen. Stat. Ann. § 25-2-314 ................................................................... 19

N.J. Stat. Ann. § 12A:2-314 .......................................................................... 19

Nev. Rev. Stat. § 104.2314 ............................................................................ 19

Tenn. Code Ann. § 47-2-314 ..................................................................... 19, 21

U.C.C. § 2-314 ............................................................................................... 20

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Costa, Guerrero, and Robinson filed this action against Whirlpool on February 12, 2024. (*See* ECF No. 1.) On April 9, 2024, this Court granted the parties' Joint Stipulation to Consolidate Related Actions pursuant to Fed. R. Civ. P. Rule 42(a) and consolidated Plaintiffs Costa, Guerrero, and Robinson's action with Plaintiff LaManna's class action. (*See* ECF No. 22.) That same day, Plaintiffs Costa, Butler, Gandara, Guerrero, Hayden, Kempf, McDuffey, Middlebrooks, Robinson, Rombach, Tata, Fiorucci, Kincaid, and LaManna filed the Consolidated Amended Class Action Complaint. (*See* ECF No. 23.) Whirlpool moves to dismiss all of Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6).

## SUMMARY OF ARGUMENT

Fourteen purchasers of various Whirlpool refrigerators allege differing experiences with their appliances' ancillary features, including the ice-maker, ice-dispenser, water dispenser, and control panel. Plaintiffs allege a singular design defect is to blame: the wires in their refrigerator doors are not strong enough. According to Plaintiffs, Whirlpool misrepresented its refrigerators as having a functioning ice maker, ice dispenser, water dispenser, and control panel, even though it knew those features may experience malfunctions. Their claims fail for three main reasons.

***First***, to allege knowledge, Plaintiffs select 22 online consumer reviews posted over a nine-year period from among over 20,000 available in the sources they cite—the vast majority of which are positive and average four stars in the aggregate. These chosen 22 represent a tiny fraction—0.067%—of the total consumer reviews incorporated into their pleading. Several of them post-date some Plaintiffs' purchases, and those that pre-date their purchases were plainly publicly-available for Plaintiffs to consider when making their purchase decisions. This is insufficient to plausibly allege Whirlpool possessed knowledge of the systemic "defect" central to Plaintiffs' claims.

**Second**, Plaintiffs identify factually-true marketing statements that their refrigerators feature ice makers and in-door ice and water dispensers, and non-actionable statements about the refrigerators' "reliability." None of these constitutes an actionable misrepresentation. These two deficiencies alone are sufficient to bar virtually all of Plaintiffs' claims.

**Third**, no Plaintiff alleges that their refrigerator has lost its ability to keep food cool. Their failure to allege that their refrigerators lost their central cooling function is fatal to their claims that Whirlpool breached the implied warranty of merchantability. Their allegations about malfunctions of various ancillary features do not save their implied warranty claims.

For these and the additional reasons set out below, Whirlpool respectfully requests that the Court dismiss Plaintiffs' claims in their entirety. (*See* Appendix Tab 1 (chart summarizing which of 32 counts are impacted by each of the bases for dismissal described below).)

## STATEMENT OF FACTS

### I.     PLAINTIFFS' ALLEGED FACTS

#### A.     Plaintiffs' refrigerator purchases and service issues

Fourteen individuals from eleven states are named as Plaintiffs and each purports to assert their claims on behalf of themselves, a nationwide class, and a state-specific subclass. (*See* D.I. No. 23, First Amended Class Action Complaint) (hereinafter "Compl."). Between December 2019 and April 2022, each Plaintiff purchased a Whirlpool refrigerator from various third-party retailers, including Lowe's (D.I. No. 23, Compl. ¶¶ 23, 68, 74, 87, 114), Home Depot (*id.* ¶¶ 29, 42, 49), Costco (*id.* ¶¶ 36, 80), Best Buy (*id.* ¶¶ 55, 94, 107), and Appliance Rehab (*id.* ¶ 100). At varying points after purchase, Plaintiffs' refrigerators experienced problems with certain external features, including their ice makers (*id.* ¶¶ 25, 44, 38, 51, 57, 70, 76, 82, 89, 96, 102, 116); ice dispensers (*id.* ¶¶ 31, 70, 110), water dispensers (*id.* ¶¶ 60, 102), and control panel (*id.* ¶ 89). Plaintiffs acknowledge that their refrigerators were purchased subject to a one-year limited

warranty. (*Id.* ¶ 636.) None of the Plaintiffs allege that they experienced a problem with their refrigerators during the one-year express warranty period.

### B.     Plaintiffs' "Defect" theory

Plaintiffs allege that because of Whirlpool's "defective design" or choice of "defective materials[,]" the wires running through the Class Refrigerators' doors are "too brittle to withstand [the] flexing that occurs and is intended to occur with ordinary use." (*Id.* ¶ 122.) (the "Defect"). As a result, "virtually all [of the wires] will eventually break within the useful life of the refrigerator[s]" and cause several of the Class Refrigerators' ancillary features to fail—including the ice maker, ice dispenser, water dispenser, and control panel. (*Id.* ¶¶ 122–123.) Contrary to Plaintiffs' theory, nearly all of them have only experienced the failure of one feature: *e.g.*, eight Plaintiffs only had their ice maker fail, while two had their ice dispenser fail.

Plaintiffs also allege that the Defect poses a safety hazard, because the exposed wires can cause "shock, electrocution or fire." (*Id.* ¶¶ 6, 126.) But they do not allege any actual instances in which such hazards have occurred or allege facts, such as testing or the voltage of the wires, that support this speculative allegation. (*Id.*)

Plaintiffs further allege that Whirlpool has failed to offer a permanent fix for the Defect because "the only 'repair' is to replace the entire door." (*Id.* ¶ 128.) According to Plaintiffs, this repair is inadequate because of: (1) the cost; (2) prolonged delivery times, and (3) the replacement door being similarly defective. (*Id.*) No Plaintiff actually purchased a replacement door. They simply assume the replacement doors will have the same Defect. Moreover, five Plaintiffs do not allege they ever even contacted Whirlpool to seek a repair for their refrigerator: Fiorucci, Kincaid, McDuffey, Middlebrooks, and Rombach. Another four did not contact Whirlpool until *after* they already sought an unsuccessful repair from a third-party: Butler, Costa, Hayden, and LaManna.

### C.     Whirlpool's alleged knowledge of the Defect

Plaintiffs' conclusion that Whirlpool had knowledge of the Defect is supported only by online consumer reviews. Specifically, Plaintiffs cite 22 consumer posts that span nine years across eight online sources. (D.I. No. 23, Compl. ¶¶ 140 –172.)[1]

#### 1.     *The reviews mentioning the "Defect" are a tiny fraction of the total number of reviews*

Plaintiffs cite only six reviews from Whirlpool.com and ten reviews from third-party retailer websites (*id*. ¶¶ 149–152, 154–159, 161). Multiple are duplicates. (*Id*.)[2]

| Website | Number of Reviews Cited | Total Number of Reviews on Website | Avg. Product Star Rating | Percentage of Total Reviews |
|---|---|---|---|---|
| Whirlpool | 6 | 4,280 | 3.9 / 5 stars | 0.140% |
| Lowes | 4 | 7,127 | 4.1 / 5 stars | 0.056% |
| Home Depot | 3 | 6,918 | 4.2 / 5 stars | 0.043% |
| Best Buy | 2 | 1,223 | 4.2 / 5 stars | 0.164% |
| Costco | 1 | 1,157 | 3.8 / 5 stars | 0.086% |
| **Totals** | **14** | **20,705** | **4.1 / 5 stars** | **0.067%** |

Plaintiffs also cite ten posts from several consumer advocate and class action solicitation websites. (*Id*. ¶¶ 141–147, 169–171.) The seven posts from ApplianceBlog.com (*id*. ¶¶ 141–147) cannot be accessed because that website is no longer available. The two posts from ConsumerAffairs.com were plucked from a total of 1,989 posts, reflecting less than 0.1% of those reviews. (*Id*. ¶¶ 169, 171.) And there is only one relevant complaint from BigClassAction.com. (*Id*. ¶ 170.)

---

[1] Plaintiffs' allegations of online reviews are integral to their conclusion that Whirlpool had knowledge of the "Defect." Therefore, the product reviews on each of the referenced websites are incorporated by reference in Plaintiffs' Complaint. *See Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider . . . any matters incorporated by reference or integral to the claim[.]") (internal quotations omitted).

[2] Three of the reviews Plaintiffs cite appear on both the Lowes and Whirlpool websites, and two appear on both the Home Depot and Whirlpool websites. These reviews are included in the count for both websites in the table, but counted once in the total number of 22 cited reviews.

Finally, Plaintiffs cite a singular YouTube video, but do not allege that Whirlpool saw the video or has a practice of monitoring any YouTube.com videos posted about its products. (*Compare* D.I. No. 23, Compl. ¶ 166 *with id*. ¶ 168.)

### 2.   *Post-sale reviews cannot support pre-sale knowledge*

Importantly, several cited reviews were posted after some Plaintiffs' purchases. For example, only five of the reviews were posted to Whirlpool.com and ten to other websites prior to Plaintiffs Middlebrooks, Guerrero, Butler, Rombach, Hayden and McDuffey's purchases. At most, only six of the Plaintiffs purchased their refrigerators after all 22 of the cited consumer reviews were posted. [3] And all 22 are plainly publicly-available.

### D.   **Whirlpool's alleged misrepresentations**

Plaintiffs generally allege that "Whirlpool advertises [the] Class Refrigerators as having functional and reliable ice makers/dispensers and water dispensers." (D.I. No. 23, Compl. ¶ 132.) They identify four specific statements in support of this conclusion:

- "Exterior Ice and Water Dispenser[s]" are "Key Features." (*Id*. ¶¶ 10, 133.)

- "A factory-installed ice maker churns out all the ice cubes you need, all year round." (*Id*. ¶ 10.)

- "Don't worry about refilling ice trays with this pre-installed ice maker that makes sure you always have plenty of ice on hand." (*Id*. ¶¶ 135–137.)

- "Access fresh filtered water and ice without opening the refrigerator door." (*Id*. ¶¶ 11, 135–137.)

---

[3] Five of the cited reviews include a year but not a month or day.

### E.      Plaintiffs' claims

Based on the above allegations, Plaintiffs bring the following claims: common law fraud (on behalf of a nationwide class or the state subclasses), negligent misrepresentation (same), unjust enrichment (same), breach of express warranty (same), breach of implied warranty (on behalf of the state subclasses), violations of state consumer protection statutes (same), and violations of the Magnuson-Moss Warranty Act (on behalf of the nationwide class).

## <u>LEGAL STANDARD</u>

Under Rule 12(b)(6), dismissal is appropriate for Plaintiffs' "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, Rule 8 requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (cleaned up). The complaint must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). This plausibility standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678; *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678–79.

Additionally, Plaintiffs' claims that sound in fraud must be pled with particularity under Rule 9(b). *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 (3d Cir. 1996) (Even when "fraud is not a necessary element of a claim . . . claims that do sound in fraud must be pled with particularity."); *Diaz v. FCA US LLC*, No. 21-CV-00906-EJW, 2022 WL 4016744, at *22 (D. Del. Sept. 2, 2022) (applying 9(b) to unjust enrichment and consumer protection claims).

Applying these standards to Plaintiffs' allegations shows they fall short of advancing this case and that dismissal is appropriate. (*See* App. Tab 1.)

## **ARGUMENT**

## II.    **PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE WHIRLPOOL'S PRE-SALE KNOWLEDGE OF THE "DEFECT"**

Plaintiffs' common law fraud claims hinge on Whirlpool's knowledge of the Defect (*see* App. Tab 2), as do nearly all their state consumer protection claims. (*See* App. Tab 6.)

Courts have construed several of the consumer protection statutes as requiring knowledge. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) (collecting cases) ("[U]nder the [Consumer Legal Remedies Act], plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss."); *Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016) (citing *Wilson* for proposition that [Unfair Competition Law] claims, whether premised on unlawful, unfair, or fraudulent prong, require seller's knowledge of defect); *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2015 WL 4967535, at *9 (N.D. Cal. Aug. 20, 2015) (finding that "a plaintiff bringing a claim under the [False Advertising Law] must allege sufficient facts to show that a defendant knew that any allegedly false or misleading statements were false or misleading when made"); *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. App. 1999) ("[I]t is proper to construe the provisions of the [Michigan Consumer Protection Act] with reference to the common-law tort of fraud[,]" and one element of fraud is knowledge); *Poole v. Nevada Auto Dealership Investments, LLC*, 449 P.3d 479, 483 (Nev. App. 2019) (concluding that a "knowing" act or omission under the Nevada Deceptive Trade Practices Act means the defendant is aware that the facts exist that constitute the act or omission).

Additionally, the Florida Deceptive and Unfair Trade Practices Act, Illinois Consumer Fraud and Deceptive Business Practices Act, Massachusetts Consumer Protection Act, Missouri Merchandising Practices Act, New Jersey Consumer Fraud Act, and North Carolina Unfair and

Deceptive Acts and Practices Act all require a "deceptive," "unfair," or "unlawful" practice. Plaintiffs' foundation for these claims is that Whirlpool knowingly sold defective refrigerators, failed to disclose that defect, and knowingly misrepresented the refrigerators' characteristics. (*See* D.I. No. 23, Compl. ¶ 298, 331, 390–92, 451–52, 517, 551.) Several of the violations of the Illinois Consumer Fraud and Deceptive Business Practices Act that Plaintiffs plead also explicitly require that Whirlpool had knowledge of the Defect. (*See* App. Tab 6; D.I. No. 23, Compl. ¶ 331.)

Yet Plaintiffs' allegations supporting their conclusion that Whirlpool had knowledge of the "Defect" are exceedingly thin and of the kind courts regularly find lacking.

### A. Conclusory statements about the regular activities of a product manufacturer do not support an inference of knowledge

Initially, Plaintiffs conclude that "Whirlpool necessarily would have discovered [the Defect] in the course of its design, testing, and manufacture of the Class Refrigerators." (D.I. No. 23, Compl. ¶ 9.) But this conclusory, "undetailed assertion that the testing *must* have revealed the [Defect]" provides no support for Plaintiffs' allegation that Whirlpool had pre-sale knowledge. *Diaz*, 2023 WL 6160560, at *7; *see also Wilson*, 668 F.3d at 1147 (general allegation that manufacturer has access to testing and data is "speculative" and does not suggest how the manufacturer could have known about the defect); *Smith v. Gen. Motors LLC*, 988 F.3d 873, 884 (6th Cir. 2021) (finding no knowledge where plaintiffs' generalized allegations about testing included "no specific allegations about the results of the tests" and whether they actually revealed the defect to the manufacturer).

Rather, these types of "general statements about the testing of [a product]" and resulting data are the type of "mere conclusory statements that the Court must ignore." *Maugain v. FCA US LLC*, No. CV 22-116-GBW, 2023 WL 1796113, at *10 (D. Del. Feb. 7, 2023) (quotation

omitted). Plaintiffs cannot baselessly turn Whirlpool's regular activities as a product manufacturer against it.

### B. Consumer reviews alone are insufficient evidence of a manufacturer's knowledge

Ignoring Plaintiffs' conclusions about testing leaves only a handful of consumer reviews supporting Plaintiffs' conclusion Whirlpool knew of the "Defect." (*Supra* I.C.) Customer acomplaints are generally disfavored as "scant" ways of showing a manufacturer's knowledge. *See Smith*, 988 F.3d at 886; *see also Wilson*, 668 F.3d at 1147 (noting that "courts have expressed doubt that customer complaints in and of themselves adequately support an inference that a manufacturer was aware of a defect."). Rather than showing knowledge, online customer complaints "merely establish the fact that some consumers were complaining" and are by themselves "insufficient." *Berenblat v. Apple, Inc*., No. 08-4969 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010). Indeed, "imputing knowledge of a defect to a manufacturer based upon an internet posting would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery." *Oliver v. Funai Corp., Inc*., No. 14-CV-04532, 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015) (quotation omitted).

Additionally, courts in this Circuit have "repeatedly found that consumer complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where there are no allegations that the manufacturer saw such complaints." *Granillo v. FCA US LLC*, No. CV 16-153 (FLW)(DEA), 2016 WL 9405772, at *9 (D.N.J. Aug. 29, 2016); *see also Diaz v. FCA US LLC*, No. 21-CV-00906-EJW, 2022 WL 4016744, at *30 (D. Del. Sept. 2, 2022). Of the ten posts on consumer advocate and class action solicitation websites, three allege that the poster *contacted* Whirlpool. But none include responses directly from Whirlpool to the posts themselves. Thus, Plaintiffs' allegation that Whirlpool "monitors" those sites is

"speculative absent any supporting facts" and thus insufficient to survive a motion to dismiss. *Smith*, 988 F.3d at 885 (*See* D.I. No. 23, Compl. ¶ 8, 168, 626.)

### C. The cited consumer reviews represent less than 0.1% of the total reviews, which are overwhelmingly positive

Plaintiffs speculate that "[o]ver the past decade, at least hundreds—and likely thousands—of consumers have complained directly to Whirlpool about the Defect." (D.I. No. 23, Compl. ¶ 8.) But the very websites they cite demonstrate the opposite. As evidence of Whirlpool's knowledge of Plaintiffs' specific issue among the tens of millions of Whirlpool products serving homes every day, they cherry pick less than 25 posts out of over 20,000. (*Supra* I.C.)

Courts typically require an "unusually high number of complaints" to allow an inference of a defendant's pre-sale knowledge. *See e.g., Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1026 (9th Cir. 2017). Twenty-two is simply not enough. *See e.g., Gregorio v. Ford Motor Co*., 522 F. Supp. 3d 264, 280, 281 (E.D. Mich. 2021) (finding 36 complaints over a nine-year span insufficient); *Dawson v. Gen. Motors LLC*, No. CV 19-8680, 2019 WL 3283046, at *6 (D.N.J. July 22, 2019) (finding 100 complaints over several years insufficient to establish knowledge); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 865 (N.D. Cal. 2018) (subsequent history omitted) (finding 81 complaints posted over the course of seven years insufficient to establish knowledge). In *Smith*, the Sixth Circuit found that even 239 NHTSA complaints plus additional online postings were not frequent enough to prevent being "lost in a sea of complaints and repairs." 988 F.3d at 885. The cited complaints represent less than 0.07% of the total number of reviews on both Whirlpool.com and the retailer websites. (*Supra* I.C.) The most plausible inference is that such a low number of relevant consumer reviews is just a "blip" on Whirlpool's

radar. *See Roe v. Ford Motor Co*., No. 2:18-CV-12528-LJM-APP, 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019).

For some Plaintiffs, the number of reviews posted prior to purchase is even lower. Multiple of the reviews were posted *after* some Plaintiffs purchased their refrigerators. (*Supra* I.C.) Those reviews that postdate a Plaintiff's purchase cannot support an inference of knowledge at the time of that sale. *See e.g., Suriaga v. Gen. Electric Co*., No. 18-16288(ES)(MAH), 2019 WL 6799613, at *6 (D.N.J. Dec. 12, 2019) (stating that complaints posted after purchase "do not factually support Plaintiff's allegations of knowledge"). And these posts were plainly publicly-available for Plaintiffs to consider at the time they made their purchase decisions.

## III. PLAINTIFFS IDENTIFY NO ACTIONABLE MISREPRESENTATIONS

Plaintiffs' fraud by misrepresentation (*see* App. Tab 2), negligent misrepresentation (*see id.* Tab 4), and express warranty claims (*see id*. Tab 5) require that Whirlpool made an actionable misrepresentation. The same is true for all of their state consumer protection act claims premised on misrepresentations. (*See Id.* Tab 6.) Plaintiffs identify four statements they allege are actionable misrepresentations. None of them are.

### A. Two of the statements are claims about reliability, which is recognized as puffery and not a misrepresentation

The basis of Plaintiffs' misrepresentation allegations is that "Whirlpool advertises [the] Class Refrigerators as having functional and reliable ice makers/dispensers and water dispensers." Two of the "misrepresentations" Plaintiffs identify are fundamentally claims about the ice makers' reliability: (1) "[a] factory-installed ice maker churns out all the ice cubes you need, all year round," (D.I. No. 23, Compl. ¶ 10), and (2) "[d]on't worry about refilling ice trays

with this pre-installed ice maker that makes sure you always have plenty of ice on hand." (*Id*. ¶¶ 135–137.)

These statements are not actionable because they "offer no significant measurable value." *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 343 (E.D. Pa. 2022). They do not promise or guarantee a level of performance, they merely provide general, unspecified assertions about the refrigerators' reliability and performance—which are non-actionable puffery. *See Tatum v. Chrysler Grp. LLC*, No. 10-CV-4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (advertising claims that "reliable" and "durable" "amounted to nothing more than non-actionable hyperbole or puffery."); *Argabright v. Rheem Mfg. Co*., 201 F. Supp. 3d 578, 608 (D.N.J. 2016) (statements that a product is "dependable" are "neither measurable nor concrete, and are simply too imprecise to be considered material."); *Anunziato v. eMachines, Inc*., 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005) (statements about "reliability" are puffery).

Similar "don't worry" statements have been found to be puffery in the consumer products context. *See e.g., Garner v. Glob. Plasma Sols. Inc*., 590 F. Supp. 3d 738, 744 (D. Del. 2022) (promises that a product will alleviate worry are not "objectively measurable") (internal quotations omitted); *Cheatham v. ADT Corp*., 161 F. Supp. 3d 815, 828 (D. Ariz. 2016) (statements about "the efficacy" of a wireless security system were puffery, including that it provides "worry-free living"); *Loomis v. Slendertone Distrib., Inc*., 420 F. Supp. 3d 1046, 1082 (S.D. Cal. 2019) (statement that purchasers of The Flex Belt exercise equipment "don't have to worry about [their] form or come up with the time to get it done" was non-actionable puffery).

The same is true for statements that a product "always" works effectively. *See e.g*., *EP Henry Corp. v. Cambridge Pavers, Inc.*, No. 17-1538 (JBS/KMW), 2017 WL 4948064, at *3 (D.N.J. Oct. 31, 2017) (courts "regularly find that, standing alone, language suggesting

12

perpetuity or an indefinite period of time constitutes non-actionable puffery") (collecting cases); *Dyson, Inc. v. Garry Vacuum, LLC*, No. CV-10-01626 MMM (VBKx), 2011 WL 13268002, at *15 (C.D. Cal. Jan. 4, 2011) (Dyson's statement that its vacuums "always work effectively" is non-actionable puffery); *Punian v. Gillette Co*., No. 14-CV-05028-LHK, 2016 WL 1029607, at *9 (N.D. Cal. Mar. 15, 2016) (Defendants' representations that consumers "will always have access to power" and can "trust" Duralock Batteries were nonactionable puffery).

### B.   Two of the statements are factually-true descriptions of the Class Refrigerators

Whirlpool's representations that "Exterior Ice and Water Dispenser[s]" are "Key Features" of the refrigerators, (D.I. No. 23, Compl. ¶¶ 10, 133), and that purchasers can "[a]ccess fresh filtered water and ice without opening the refrigerator door," (*Id*. ¶¶ 11, 135–137), are factually true statements: Plaintiffs' refrigerators all have an ice and water dispenser. Whirlpool never represented that these features will work forever or that they will never need repair.[4] "[N]o product is ever maintenance-free," and "no consumer reasonably could have that expectation." *Stearns v. Select Comfort Retail Corp*., No. 08-2746 JF, 2009 WL 1635931, at *11 (N.D. Cal. June 5, 2009). Plaintiffs fail to identify any representation by Whirlpool that the Class Refrigerators "had any characteristic they do not have." *Daugherty v. Am. Honda Motor Co*., 51 Cal. Rptr. 3d 118, 125 (2006), as modified (Nov. 8, 2006). Instead, all of Plaintiffs' refrigerators "functioned as represented throughout their warranty periods." *Id*.; *Smith v. Ford Motor Co*., 462 F. App'x 660, 665 (9th Cir. 2011) ("[T]he expectation of the reasonable consumer regarding the

---

[4] In their introduction, Plaintiffs cite Whirlpool's statement that its refrigerators "have the lowest repair rate among side-by-side refrigerators." (D.I. No. 23, Compl. ¶ 7.) This statement does not claim that the Class Refrigerators will never need repair. Instead, it makes a relative claim comparing Whirlpool's repair rates to other manufacturers'—which Plaintiffs do not allege is false.

life span of an individual component [of a mechanical system] is that it will function properly for the length of the express warranty.").

Furthermore, Whirlpool's Limited Warranty explicitly advises that Plaintiffs' refrigerators may malfunction and specifies the terms on which Whirlpool will repair or replace them. This "repair or replacement warranty does not warrant how the goods will perform in the future." *Ontario Hydro v. Zallea Sys., Inc.*, 569 F. Supp. 1261, 1266 (D. Del. 1983); *In re Caterpillar, Inc., C13 and C15 Engine Prods Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *24 (D.N.J. July 29, 2015) (quoting *Ontario Hydro*, 569 F. Supp. at 1266); *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, No. 2004-CV-11836-RCL, 2006 WL 8445725, at *4 (D. Mass. Jan. 31, 2006) (same); *Williams v. United Techs. Corp.*, No. 2:15-CV-04144-NKL, 2015 WL 7738370, at *5 (W.D. Mo. Nov. 30, 2015) (same); *see also Daniel v. Ford Motor Co*., 806 F.3d 1217, 1224 (9th Cir. 2015) (a Limited Warranty "does not mean that each [product] is defect free").

## IV.     WHIRLPOOL HAD NO DUTY TO DISCLOSE

### A.     Plaintiffs' omission-based fraud claims fail because Plaintiffs fail to plead a duty to disclose

There can be no actionable omission without a duty to speak. *See Gould v. M & I Marshall & Isley Bank*, 860 F. Supp. 2d 985, 989–90 (D. Ariz. 2012); *Daugherty*, 51 Cal. Rptr. 3d at 126; *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879 (Fla. 4th DCA 2000); *Connick v. Suzuki Motor Co., Ltd*., 675 N.E.2d 584, 593 (Ill. 1996); *SonicSolutions Algae Control, LLC v. Diversified Power Intl., LLC*, No. CV 21-30068-MGM, 2024 WL 1043001, at *18 (D. Mass. Mar. 8, 2024); *MacDonald v. Thomas M. Cooley Law Sch*., 724 F.3d 654, 665-66 (6th Cir. 2013); *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 340 (W.D. Mo. Ct. App. 2009); *Schechter v. Hyundai Motor Am*., No. CV 18-13634 (FLW), 2019 WL 3416902, at

*9 (D.N.J. July 29, 2019); *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 933 F. Supp. 2d 1279, 1292

(D. Nev. 2013); *Comer v. Person Auto Sales, Inc.*, 368 F. Supp. 2d 478, 486 (M.D.N.C. 2005);

*EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, 810 F. App'x 389, 395 (6th Cir.

2020) (citing *Chrisman v. Hill Home Dev., Inc.*, 978 S.W.2d 535, 538–39 (Tenn. 1998)).

Plaintiffs allege that Whirlpool had such a duty because: (1) it had exclusive and superior

knowledge of the Defect, (2) knew such information was not reasonably accessible to Plaintiffs,

(3) actively concealed the Defect, and (4) made partial representations regarding the reliability,

safety, and quality of the refrigerators. (*See* D.I. No. 23, Compl. ¶¶ 177, 201, 231, 334, 423, 455,

487, 555, 588, 690). Plaintiffs are mistaken about what triggers a duty to disclose in each state,

as the bases they plead do not align with the bases state courts have accepted. (*See* App. Tab 3.)

For example, Florida, Illinois and Nevada all require a fiduciary or other special relationship

between the parties to establish a duty to speak in a fraudulent concealment claim, which

Plaintiffs do not allege. *See Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D.

Fla. 2021); *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012); *Tai-Si Kim*

*v. Kearney*, 838 F. Supp. 2d 1077, 1093 (D. Nev. 2012) (citing *Dow Chem. Co. v. Mahlum*, 114

Nev. 1468, 970 P.2d 98, 112 (1998), overruled in part on other grounds by *GES, Inc. v. Corbitt*,

21 P.3d 11, 15 (Nev. 2001)). Regardless, all four bases Plaintiffs do plead fail.

***Exclusive Knowledge & Information Not Reasonably Accessible to Plaintiffs.*** Plaintiffs

fail to plead Whirlpool's knowledge of the Defect, much less its *exclusive* knowledge. (*Supra* II.)

Given that Plaintiffs' sole basis for alleging knowledge is public online consumer reviews, they

cannot argue that Whirlpool's knowledge was exclusive. *See Czuchaj v. Conair Corp.*, No. 13-

CV-1901-BEN RBB, 2014 WL 1664235, at *5 (S.D. Cal. Apr. 18, 2014) (finding that Plaintiffs

failed to plead exclusive knowledge "that was unavailable to the public."). Nor can they argue

that Whirlpool had access to information not reasonably accessible to Plaintiffs. *See Wolph v. Acer Am. Corp.*, No. C 09-01314 JSW, 2009 WL 2969467, at *4 (N.D. Cal. Sept. 14, 2009) (Plaintiffs failed to plead that they could not have "reasonably discovered" a defect because they did not allege "any information known by [the manufacturer] that was unavailable to the public."). All the complaints Plaintiffs cite were publicly available, and several Plaintiffs expressly allege that they reviewed customer reviews on the cited retailer websites prior to their purchase. (D.I. No. 23, Compl. ¶ 88, 108, 115.)

Plaintiffs also allege that the Defect posed a safety risk that Whirlpool knew about and should have disclosed. In support, they provide only the conclusory allegation that "[the Defect] creates a safety hazard because it results in exposed live wires." (D.I. No. 23, Compl. ¶ 6). The Complaint itself, however, is devoid of factual allegations showing any instance of physical injury or any safety concerns posed by the defect. *See Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 127 (Cal. App. 2d Dist. 2006), as modified (Nov. 8, 2006). Nor do any of the customer reviews cited by Plaintiffs refer to any safety issues. Instead of alleging facts, Plaintiffs merely "theorize[]" that the exposed wires could cause short circuits, shocks, and fires, which is insufficient to survive a motion to dismiss. *See Smith v. Gen. Motors LLC*, 988 F.3d 873, 876 (6th Cir. 2021).

**Active Concealment.** Whirlpool cannot conceal a defect it has no knowledge of. Because Plaintiffs fail to plead Whirlpool's knowledge, (*supra* II), by default, they fail to plead active concealment. Additionally, active concealment requires more than mere silence. *See U.S. v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000) ("numerous decisions expressly distinguish between passive concealment—mere nondisclosure or silence—and active concealment") (collecting cases).

Here, Plaintiffs' only active concealment allegation is the conclusory assertion that Defendants "actively concealed" the Defect. (*See e.g.,* D.I. No. 23, Compl. ¶¶ 178 231 301 334 358 487 588 690). This is insufficient to survive a motion to dismiss. To plead fraud with particularity, as required under Rule 9(b), the plaintiff must "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Plaintiffs' "conclusory reference to active concealment" does not meet this standard. *See e.g., Fillinger v. Lerner Sampson & Rothfuss*, 624 Fed. Appx. 338, 341 (6th Cir. 2015) (unpublished); *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013) ("[T]o state a claim for active concealment, Plaintiff must allege specific affirmative acts on the part of the Defendants in hiding, concealing or covering up the matters complained of.") (internal quotations omitted).

***Partial Representations.*** Finally, Plaintiffs' conclusory allegation that "Whirlpool made partial representations" regarding "the reliability, safety, and quality" is also insufficient to establish a duty to disclose. (*See e.g.,* D.I. No. 23, Compl. ¶¶ 231, 253, 262, 334, 358, 423, 487, 588, 680.) A duty to disclose based on a partial representation may arise when "the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead." *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 755 (E.D. Mich. 2017) (internal quotations omitted). "Thus a defendant may not suppress or conceal any facts *within his knowledge* which materially qualify those stated." *Herron*, 924 F. Supp. 2d at 1177 (emphasis added) (internal quotations omitted). Once again, because Plaintiffs fail to plead Whirlpool's knowledge (*supra* II), they fail to plead a duty to disclose based on partial representations.

**B.      Failure to plead a duty to disclose also bars Plaintiffs' negligent misrepresentation claims**

Plaintiffs' negligent misrepresentation claims are predicated on Whirlpool's "false and/or misleading" advertisements, which they allege were "fraught with material omissions." (D.I. No. 23, Compl. ¶ 699.) These claims fail in Arizona, California, Florida, Illinois, Massachusetts, Michigan, Missouri, Nevada, New Jersey, and Tennessee because omission-based negligent misrepresentation claims require a duty to disclose, which Plaintiffs fail to plead. *See Kuehn v. Stanley*, 91 P.3d 346, 350–51 (Ariz. Ct. App. 2004); *In re Soc. Media Adolescent Addiction/Pers.Inj. Prods. Liab. Litig.*, No. 4:22-MD-03047-YGR, 2024 WL 1786290, at *5 (N.D. Cal. Apr. 15, 2024); *Pop v. LuliFama.com LLC*, No. 8:22-CV-2698-VMC-JSS, 2024 WL 1194485, at *8 (M.D. Fla. Mar. 20, 2024); *Pearson v. Garrett-Evangelical Theological Seminary, Inc*., 790 F. Supp. 2d 759, 768 (N.D. Ill. 2011); *In re TJX Companies Retail Sec. Breach Litig.*, 524 F. Supp. 2d 83, 91 (D. Mass. 2007), aff'd in part, 564 F.3d 489 (1st Cir. 2009), as amended on reh'g in part (May 5, 2009); *Dugan v. Vlcko*, 307 F. Supp. 3d 684, 700 (E.D. Mich. 2018); *Duncan v. Savannah, LLC*, 637 S.W.3d 633, 639 (E.D. Mo. Ct. App. 2021); *Smallman v. MGM Resorts Intl*., 638 F. Supp. 3d 1175, 1193 (D. Nev. 2022); *Peruto v. TimberTech Ltd*., 126 F. Supp. 3d 447, 457 (D.N.J. 2015); *Burkhart v. Wells Fargo Bank W., N.A*., No. E2006-01402-COA-R3CV, 2007 WL 1836850, at *4 (Tenn. App. June 27, 2007). Plaintiff Robinson's claim also fails in North Carolina, where negligent misrepresentation claims cannot be based on omissions. *Bonham v. Wolf Creek Acad*., 767 F. Supp. 2d 558, 570 (W.D.N.C. 2011).

**C.      Failure to plead a duty to disclose also bars Plaintiffs' consumer protection act claims**

Plaintiffs' consumer protection act claims based on Whirlpool's alleged fraudulent omissions also fail because Plaintiffs do not plead a duty to disclose. There is no fraud by

omission absent a duty to speak. (*Supra* IV.A.) Additionally, the Nevada Deceptive Trade Practices Act and California False Advertising Law do not allow for omission-based claims. *See Smith-Brown v. Ulta Beauty, Inc*., No. 18 C 610, 2019 WL 932022, at *12 (N.D. Ill. Feb. 26, 2019) (finding no cases where a court "permitted a plaintiff to proceed under the NDTPA without pleading that the defendant made specific, affirmative misrepresentations"); *Hodsdon v. Mars, Inc*., 162 F. Supp. 3d 1016, 1023 (N.D. Cal. 2016), aff'd, 891 F.3d 857 (9th Cir. 2018) ("When the crux of a plaintiff's FAL claim is that the defendant did not make any statement at all about a subject, then a claim under the FAL may not advance").

## V.   PLAINTIFFS' REFRIGERATORS ARE FIT FOR THEIR ORDINARY PURPOSE OF COOLING FOOD

Plaintiffs' implied warranty claims all fail because the Class Refrigerators are fit for their ordinary purpose. *See* Ariz. Rev. Stat. Ann. § 47-2314; Cal. Civ. Code §§ 1790–1795.8; Fla. Stat. §§ 672.314 and 680.212; Ill. Comp. Stat. § 5/2-314; Mass. Gen. Laws ch. 106, § 2-314; Mich. Comp. Laws § 440.2314; Mo. Rev. Stat. § 400.2-314; Nev. Rev. Stat. § 104.2314; N.J. Stat. Ann. § 12A:2-314; N.C. Gen. Stat. Ann. § 25-2-314; Tenn. Code Ann. § 47-2-314.

"The ordinary purpose for refrigerators is to keep perishables cold." *Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-CV-1321, 2022 WL 4243957, at *15 (S.D. Tex. Sept. 13, 2022). Plaintiffs do not allege that the Defect in any way impairs their use of the Class Refrigerators to store perishable food. Indeed, only one of the Plaintiffs allege that they no longer use their refrigerator: Plaintiff McDuffey. (*See* D.I. No. 23, Compl. ¶ 90.) The other thirteen Plaintiffs still use their refrigerator for its "ordinary purpose," which is to "consistently chill food." *See Sosenko v. LG Elecs. U.S.A., Inc*., No. 819CV00610JLSADS, 2019 WL 6118355, at *6 (C.D. Cal. Aug. 29, 2019). And even McDuffey does not allege that his refrigerator stopped cooling— he states that it is "not operational" and "*he believes* it poses a safety risk"—but he pleads no

facts to support either of those conclusions. (Compl. ¶ 90) (emphasis added.) Rather, it appears he merely chooses not to use his refrigerator because the touch panel won't allow him to adjust certain settings, not because his refrigerator is incapable of cooling.

Courts have found similar defect allegations that do not affect the core-functionality of a product insufficient to support a breach of implied warranty of merchantability claim. *See e.g., Rossi v. Whirlpool Corp.*, No. 2:12-CV-00125, 2013 WL 5781673, at *7 (E.D. Cal. Oct. 25, 2013) (dismissing implied warranty claim where plaintiff did not allege "that the products failed to refrigerate"); *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc*., 992 F. Supp. 2d 962, 979–80 (C.D. Cal. 2014) (the ordinary purpose of a vehicle is driving, and plaintiffs did not allege that they stopped driving their vehicles due to the automatic braking defect*); Dack v. Volkswagen Grp. of Am.*, 565 F. Supp. 3d 1135, 1148 (W.D. Mo. 2021) (the ordinary purpose of a vehicle is transportation and plaintiffs did not allege that they stopped driving their vehicles due to a defect in the Front Assist feature). Plaintiffs' refrigerators are still fit for their ordinary purpose, and their implied warranty claims fail. *See* U.C.C. § 2-314.

## A. Some Plaintiffs' implied warranty claims also fail because they lack privity with Whirlpool

Plaintiffs all purchased their refrigerators from third-party retailers rather than directly from Whirlpool. Therefore, Plaintiffs lack privity with Whirlpool, which bars their implied warranty claims in:

**Arizona.** *See Haugland v. Winnebago Indus.*, 327 F. Supp. 2d 1092, 1096 (D. Ariz. 2004) ("[P]rivity of contract is required for breach of implied warranty claims made pursuant to the Arizona U.C.C."); *see also Chaurasia v. Gen. Motors Corp*., 126 P.3d 165, 171 (Ariz. Ct. App. 1st Div. 2006) (not recognizing the third-party beneficiary in the manufacturer consumer context).

**Florida.** *See Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1325–26 (S.D. Fla. 2020) ("Under Florida law, privity of contract is required to maintain an action for breach of an implied warranty.") (internal quotations omitted); *see also Rife v. Newell Brands, Inc*., 632 F. Supp. 3d 1276, 1305 (S.D. Fla. 2022) (holding Florida's third-party beneficiary exception was not applicable to consumers bringing claims against a manufacturer).

**Illinois.** *See Rodriguez v. Ford Motor Co*., 596 F. Supp. 3d 1050, 1054 (N.D. Ill. 2022) ("[P]rivity of contract is a prerequisite to recover economic damages for breach of implied warranty.") (internal quotations omitted); *see also Melnick v. TAMKO Bldg. Prods., Inc*., 469 F. Supp. 3d 1082, 1103–05 (D. Kan. 2020) (examining Illinois law and explaining that application of the third-party beneficiary exception to buyers and "remote manufacturer[s]" has not been endorsed by the Illinois Supreme Court).

**North Carolina.** *See Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N. C., Inc*., 623 S.E.2d 334, 339 (N.C. Ct. App. 2006) ("Privity is still required in an action for breach of implied warranties that seeks recovery for economic loss.").

**Tennessee.** *See Americoach Tours, Inc. v. Detroit Diesel Corp*., No. 04-2016 B/V, 05-2067 B, 2005 WL 2335369, at *6 (W.D. Tenn. Sept. 23, 2005) ("Tennessee law does not allow recovery of economic losses under a breach of warranty theory absent privity.") (internal citation omitted); *see also* Tenn. Code Ann. § 47–2–314, n. 9 ("The rule requiring privity of contract between the parties is an essential element of implied warranty…in Tennessee except in cases where the product involved is in a defective condition unreasonably dangerous to the user or to [the] property.").

## VI.    PLAINTIFFS' DEFECT IS NOT COVERED BY THE LIMITED WARRANTY

### A.    Plaintiffs plead a design defect

As Plaintiffs note, Whirlpool's Limited Warranty only covers "defects in materials or workmanship." (D.I. No. 23, Compl. ¶ 636.) This phrase has been consistently held to cover manufacturing defects only—*not* design defects. *See e.g., Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("The plain and ordinary meaning of the term defects in materials or workmanship unambiguously excludes design defects . . . Defects in 'workmanship' and 'materials' are flaws pertaining to the construction or manufacture of a product, while defects in 'design' are shortcomings that arise in the plans for a product's creation.") (cleaned up).

Here, Plaintiffs plead a design defect. Not only do Plaintiffs allege that the Defect is present in "virtually all" of the Class Refrigerators—which is characteristic of a design defect— but the logic of their defect theory itself reflects a criticism of the refrigerators' design rather than their materials. (D.I. No. 23, Compl. ¶122); *see Diaz v. FCA US LLC*, No. 21-CV-00906-EJW, 2022 WL 4016744, at *33 (D. Del. Sept. 2, 2022) (collecting cases). Plaintiffs allege that the refrigerators' "wiring is designed to flex when the door is opened and closed" but that Whirlpool chose wires that are "too brittle to withstand flexing that occurs and is intended to occur with ordinary use." (D.I. No. 23, Compl. ¶ 122.)

Their defect theory thus centers on Whirlpool's choice of material. "[A]n unbroken line of federal cases have held that warranties [like Whirlpool's Limited Warranty] . . . that cover defects in 'material' do not apply to defects . . . that arise from a manufacturer's choice of material that—while not, itself, of sub-standard quality—is insufficient to perform the job for which it was chosen." *Johnson v. FCA US LLC*, No. 20-CV-12690, 2024 WL 896568, at *4 (E.D. Mich. Mar. 1, 2024) (collecting cases). Whirlpool's choice of allegedly defective wiring materials "has all the trappings of a design defect." *Coba.*, 932 F.3d at 123. Plaintiffs' claim that

Whirlpool breached its Limited Warranty by failing to adequately repair the Defect in the Class

Refrigerators fails because the Defect (if it even exists) is not (and was not ever) covered by the

Limited Warranty. (D.I. No. 23, Compl. ¶¶ 629–646.)

> **B.      The Defect did not manifest within one year**

Additionally, Whirlpool's Limited Warranty was expressly limited to defects that arise

within "one year from the date of purchase." (Compl. ¶ 636.) Regardless of the type of defect

Plaintiffs allege, their claims are still barred because the Defect did not manifest in their

refrigerators until after the one-year warranty period expired.

| Plaintiff | Purchase Date | Defect Manifestation Date |
|---|---|---|
| Butler | April 2020 | December 2023 |
| Costa | May 2021 | April 2023 |
| Fiorucci | January 2022 | December 2023 |
| Gandara | (none alleged) | November 2023 |
| Guerrero | February 2020 | June 2023 |
| Hayden | August 2020 | October 2022 |
| Kempf | April 2022 | December 2023 |
| Kincaid | August 2021 | January 2024 |
| LaManna | September 2021 | October 2023 |
| McDuffey | August 2020 | May 2023 |
| Middlebrooks | December 2019 | October 2023 |
| Robinson | July 2021 | May 2023 |
| Rombach | June 2020 | August 2023 |
| Tata | September 2021 | January 2024 |

As a result, their express warranty claims predicated on the Limited Warranty fail. *See

e.g., Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94, 106 (3d Cir.

2013)(unpublished) ("Because [Plaintiff] alleges that the defect manifested itself outside the

warranty period, he does not state a valid claim for breach of warranty."); *Canal Elec. Co. v.

Westinghouse Elec. Co*., 973 F.2d 988, 993 (1st Cir. 1992) ("[C]ase law almost uniformly holds

that time-limited warranties do not protect buyers against hidden defects—defects that may exist

before, but typically are not discovered until after, the expiration of the warranty period.").

23

## VII.  PLAINTIFFS' RETENTION OF ANY BENEFIT IS NOT UNJUST

To plead a claim for unjust enrichment, Whirlpool's retention of the benefit of Plaintiffs' purchases must be "unjust" or "inequitable." (*See* App. Tab 7.) Indeed, this is the most important requirement. *See Freeman Indus., LLC v. Eastman Chem. Co*., 172 S.W.3d 512, 525 (Tenn. 2005); *S & J, Inc. v. McLoud & Co., L.L.C*., 108 S.W.3d 765, 768 (S.D. Mo. Ct. App. 2003); *iRecycleNow.com v. Starr Indem. & Liab. Co*., 674 Fed. Appx. 161, 162–63 (3d Cir. 2017) (unpublished).

Plaintiffs allege that "Whirlpool has been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct" (D.I. No. 23, Compl. ¶ 679)—the same allegations as their fraud-based claims. Plaintiffs' unjust enrichment claims thus fall with their fraud claims. *See Cleary v. Philip Morris Inc*., 656 F.3d 511, 517 (7th Cir. 2011) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim.") Plaintiffs' bases for why Whirlpool's retention of any benefit was "unjust" are: (1) Whirlpool's "deceptive advertising" (*id*. ¶ 677), and (2) its "full knowledge and awareness" of the Defect. (*Id*. ¶ 678.) Both these bases fail, (*supra* II–III), and so do Plaintiffs' unjust enrichment claims.

## VIII.  MULTIPLE OF PLAINTIFFS' CLASS CLAIMS FAIL

### A.  Plaintiffs lack standing to bring state claims on behalf of a nationwide class

Plaintiffs have no standing to bring state law claims on behalf of a nationwide class because a plaintiff cannot "bring claims under the laws of states in which they do not reside." *Diaz*, 2022 WL 4016744, at *11; *see also In re Wellbutrin XL Antitrust Litig*., 260 F.R.D. 143, 158 (E.D. Pa. 2009) (holding that the Named Plaintiffs lacked standing to bring claims in states where they did not purchase the product at issue); *In re Ductile Iron Pipe Fittings ("DIPF")*

24

*Indirect Purchaser Antitrust Litig.*, No. 12-169, 2013 WL 5503308, at *11 (D.N.J. Oct. 2, 2013) ("[T]his Court agrees that named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.").

Accordingly, Plaintiffs' common law fraud, negligent misrepresentation, unjust enrichment, and express warranty claims on behalf of a nationwide class must be dismissed.

## B.     Plaintiffs do not meet the statutory requirements of the Magnuson Moss Warranty Act

Plaintiffs bring claims under the Magnuson-Moss Warranty Act ("MMWA"), but their claims are expressly barred by the statute. The MMWA provides that "[n]o claim shall be cognizable . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C); *see also Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 180 (3d Cir. 2023). Plaintiffs' proposed class action includes fourteen named plaintiffs, which falls well short of this statutory requirement.

## C.     The Tennessee Consumer Protection Act bars class actions

Plaintiff Kincaid's Tennessee Consumer Protection Act ("TCPA") claim on behalf of the Tennessee subclass fails because class actions are prohibited under the TCPA. *See Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 310 (Tenn. 2008); *see also Faber v. CIOX Health, LLC*, No. 16-CV-02337-STA-CGC, 2017 WL 5957206, at *7 (W.D. Tenn. Sept. 29, 2017), aff'd, 944 F.3d 593 (6th Cir. 2019).

## <u>CONCLUSION</u>

For the above reasons, Whirlpool respectfully requests that the Court dismiss Plaintiffs' First Amended Class Action Complaint in its entirety.

DALTON & ASSOCIATES, P.A.

Andrew M. Unthank (*pro hac vice*)
Jennifer Simon (*pro hac vice*)
**WHEELER TRIGG O'DONNELL LLP**
370 17th Street, Suite 4500
Denver, CO 80202
(303) 244-1800
unthank@wtotrial.com
simon@wtotrial.com

*/s/ Michael C. Dalton*
Bartholomew J. Dalton, Esq. (#808)
Michael C. Dalton, Esq. (#6272)
1106 West 10th Street
Wilmington, DE 19806
(302) 652-2050
bdalton@dalton.law
mdalton@dalton.law

*Attorneys for Defendant Whirlpool Corporation*

Dated: May 21, 2024

26