IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

STACY COSTA, et al,                        )
                                           )
              Plaintiffs,                  )
                                           )
      v.                                   )    C.A. No. 24-188 (MN)
                                           )
WHIRLPOOL CORPORATION,                     )
                                           )
              Defendant.                   )

## <u>MEMORANDUM OPINION</u>

Scott M. Tucker, CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP, Wilmington, DE; Timothy N. Mathew, Zachary P. Beatty, Alex M. Kashurba, Marissa N. Pembroke, CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP, Haverford, PA; Peter Bradford deLeeuw, DELEEUW LAW LLC, Wilmington, DE; Daniel C. Levin, Nicholas J. Elia, LEVIN SEDRAN & BERMAN, Philadelphia, PA; D. Aaron Rihn, Sara Watkins, ROBERT PEIRCE & ASSOCIATES, Pittsburgh, PA; Nicholas A. Migliaccio, Jason S. Rathod, MIGLIACCIO & RATHOD LLP, Washington, DC  – Attorneys for Plaintiffs

Bartholomew J. Dalton, Michael C. Dalton, DALTON & ASSOCIATES, P.A., Wilmington, DE; Andrew M. Unthank, Jennifer Simon, WHEELER TRIGG O'DONNELL LLP, Denver, CO – Attorneys for Defendant.

March 21, 2025
Wilmington, Delaware



**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is Defendant Whirlpool Corporation's ("Whirlpool" or "Defendant") motion to dismiss the Second Amended Class Action Complaint ("Complaint") for failure to state a claim. (D.I. 39, 42). For the reasons set forth below, the motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.    BACKGROUND

### A.    Plaintiffs

This is a putative class action initiated by 14 individuals: Ryan Butler, Stacy Costa, Mark Gandara, Melanie Fiorucci, Nathaniel Guerrero, David Hayden, Patrick Kempf, Lamont Kincaid, Leslie LaManna, Wallace McDuffey, Timothy Middlebrooks, Missy Robinson, Misty Rombach, and Kristen Tata (together, "Plaintiffs" or "Named Plaintiffs"). (D.I. 39 ¶¶ 26-123). According to the Complaint, each of the Named Plaintiffs bought a Whirlpool refrigerator between December 2019 and April 2022 ("the Class Period"). (*Id.*). They made their purchases from third-party retailers, such as Best Buy, Costco, Lowe's, Home Depot, and Appliance Rehab. (*Id*. ¶¶ 27, 33, 40, 59, 104). Whirlpool provided each purchaser with an express one-year manufacturer's warranty ("the Limited Warranty"). (*Id.* ¶¶ 757, 784).

Plaintiffs allege that the refrigerators they bought contain a defect: the wiring that runs from the body of the refrigerator into the door panel "breaks in a short time with normal use, rendering the ice maker, ice dispenser, water dispenser, and/or door control panel useless." (*Id.* ¶ 1). This is purportedly due to the repetitive flexion of the wires during the routine opening and closing of the refrigerator doors. (*Id.* ¶¶ 4-6). As a result, Plaintiffs say they are unable to use the ice maker, water dispenser, and electronic control panel – key functions for which they expressly bargained. (*Id.* ¶¶14-19). Named Plaintiffs purport to bring this lawsuit on behalf of

themselves and all "consumers who purchased certain side-by-side or French-door style Whirlpool-, Maytag-, KitchenAid-, JennAir-, Amana-, and Kenmore-branded refrigerators manufactured by Defendant with in-door control panels, ice makers, ice dispensers, and water dispensers that contain defective wiring" ("the Class Refrigerators"). (*Id*. ¶ 1). They seek to represent a nationwide class and 11 state subclasses from Arizona, California, Florida, Illinois, Massachusetts, Michigan, Missouri, Nevada, New Jersey, North Carolina, and Tennessee. (*Id*. ¶ 299).

### B.    **Defendant**

Defendant Whirlpool is a Delaware corporation with a principal place of business in Michigan. (*Id*. ¶ 124). According to the Complaint, Whirlpool is a global designer, manufacturer, retailer, and marketer of home appliances, with brands such as KitchenAid, Maytag, and Jenn-Air, which are sold in all 50 U.S. states. (*Id*. ¶ 125).

### C.    **The Complaint's Allegations**

The Complaint principally alleges fraud: that Whirlpool knew about the defective wiring in the refrigerators but nonetheless "continued to market and sell defective Class Refrigerators while misrepresenting their quality and features and omitting and otherwise failing to disclose the known Defect." (*Id*. ¶ 18).

In support, Plaintiffs make three categories of core allegations: (1) that Whirlpool made certain misrepresentations in its advertising during the putative Class Period about the quality and functionality of the allegedly defective refrigerators; (2) that Whirlpool had a duty to disclose the known defect but omitted to do so; and (3) that Whirlpool knew about the alleged defect prior to selling each of the Named Plaintiffs their refrigerators. (*Id*. ¶¶ 136-45, 163-69, 294-298). The Court summarizes each group as follows.

1.    **Whirlpool's Alleged Misrepresentations**

The Complaint alleges that Whirlpool and its retail partners issued "false and misleading advertisements" about the refrigerators' features on consumer-facing websites and in retail stores. (D.I. 39 ¶ 136).  These advertisements are alleged to describe the "Exterior Ice and Water Dispenser[s]" as "Key Features," which "let[] you access fresh filtered water and ice without opening the refrigerator door using dual pad dispensers."  (*Id.* ¶¶ 137-141).  Plaintiffs similarly take issue with Whirlpool's marketing statements that the refrigerator's "ice maker churns out all the ice cubes you need, all year round," and that the consumer "[need not] worry about refilling ice trays with this pre-installed ice maker [because it] makes sure you always have plenty of ice on hand."  (*Id.* ¶ 14).  In short, Plaintiffs allege that Whirlpool's representations about the functionality of the ice and water dispensers are false and misleading because, in actuality, those features do not work properly.  (*Id.* ¶ 16).

2.    **Whirlpool's Alleged Knowledge, Omissions, and Duty to Disclose**

Plaintiffs also assert that "Whirlpool knew but omitted, suppressed, and concealed that its Class Refrigerators were defective," which "w[as] material because [it] directly impacted the value of the Class Refrigerators."  (*Id.* ¶¶ 144, 145, 209, 571, 677).  Named Plaintiffs claim that, but for these material omissions, they "would have either not purchased the refrigerator or purchased it for a substantially lower price."  (*Id.* ¶¶ 31, 37, 43).  According to Plaintiffs, there is "a long history of [consumer] reports of the Defect going back to at least 2012."  (*Id.* ¶ 194).  The Complaint provides examples of 375 consumer complaints, comprised of poor-review online posts and complaints to the U.S. Consumer Product Safety Commission ("CPSC").  (*See, e.g.*, *id.* ¶¶ 189-92).

In addition to the consumer reports, Plaintiffs allege that "Whirlpool's industry-standard testing of the Class Refrigerators would have necessarily revealed the Defect before [the]

Refrigerators were offered for sale." (*Id.* ¶¶ 163-69).  Consequently, the Complaint asserts that "Whirlpool had a duty to disclose the Defect because it had superior and exclusive knowledge of the Defect." (*Id.* ¶ 373).

For their own part, most of the Named Plaintiffs allege that they conducted "extensive research" before purchasing their appliances, including conducting in-person product comparisons, reading "Consumer Reports and consumer reviews," "review[ing] information regarding the refrigerator," and engaging in other "online research." (*Id.* ¶¶ 28, 34, 54, 112).

### D.    Procedural History

Plaintiffs initiated this case by complaint on February 12, 2024, followed by the First Amended Complaint on April 9, 2024.  (D.I. 1, 23).  On June 28, 2024, Plaintiffs filed the Second Amended Class Action Complaint, operative here, asserting 32 claims for violations of state consumer protection statutes, common law fraud, breaches of warranty, unjust enrichment, negligent misrepresentation, and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*  (D.I. 39).  On August 8, 2024, Whirlpool moved to dismiss.  (D.I. 42).  Briefing on the motion was completed on October 3, 2024, and the Court held oral argument on February 12, 2025.  (D.I. 43, 46, 50, 54).  The Court now addresses the motion.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Under Rule 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  Nonetheless, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Lutz*, 49 F.4th at 327.   The Court does not accept "bald assertions," "unsupported conclusions and unwarranted inferences," *Finkelman v. Nat'l Football League*, 810 F.3d 187, 202 (3d Cir. 2016), or allegations "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," *Connelly*, 809 F.3d at 790 (citation omitted).   Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.

### B.   The Rule 9(b) Pleading Standard for Fraud

Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).   This is a "heightened pleading standard." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (Rule 9(b) has "stringent pleading restrictions").   "[T]o comply with Rule 9(b), [a complaint] must allege 'the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation' and must state 'the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (quoting *Frederico*, 507 F.3d at 200).

Here, Plaintiffs allege that "Whirlpool's conduct is fraudulent," because it "has committed unfair, deceptive, and misleading practices," including "fraudulent acts," "false and misleading representations," and "knowingly and intentionally concealing [the alleged defect] from Plaintiffs." (D.I. 39 ¶¶ 20, 136, 371-74).   Thus, "because [these] claims sound in fraud [they] must be pled with particularity" under the heightened standard of Rule 9(b). *In re Westinghouse Sec.*

*Litig.*, 90 F.3d 696, 717 (3d Cir. 1996); *Carson v. HP Inc.*, No. 22-208 (CJB), 2024 WL 4300653, at *8 (D. Del. Sept. 26, 2024).

### III.    DISCUSSION

#### A.    The Fraud-Based Claims

##### 1.    Whirlpool's Alleged Misrepresentations

More than half of the claims asserted in the Complaint require adequately alleging a misstatement, omission, or other unfair or deceptive act.[1]  Plaintiffs' fraud theory, at bottom, is that "Whirlpool has continued to market and sell defective Class Refrigerators while misrepresenting their quality and features and omitting and otherwise failing to disclose the known Defect despite that the Defect poses a safety risk, adversely affects the central function of the Class Refrigerators, is essentially irreparable, and that Whirlpool has been aware of it for over a decade." (D.I. 39 ¶ 18).  Not every statement by a manufacturer can form the foundation of a fraud claim, however.  "[S]tatements are actionable only if they misstate material facts that can be measured or known."  *Fishlock v. Glob. Plasma Sols. Inc.*, No. 23-522 (SB), 2024 WL 1156719, at *1 (D. Del. Mar. 18, 2024) (quotation marks omitted).  The statements Plaintiffs challenge here are not.

First, certain of the challenged statements are simply not false.  Take, for instance, the representation that the refrigerators' "Exterior Ice and Water Dispenser" allows the customer to "access fresh filtered water and ice without ever opening the refrigerator door using dual pad sensors." (D.I. 39 ¶¶ 139-41).  That is an accurate description of a properly-functioning Whirlpool refrigerator and the experience of the thousands of consumers who use them.  It is, therefore, not

---

[1]    (*See* D.I. 39, Counts 1 (Arizona), 3-5 (California), 8 (Florida), 10-11 (Illinois), 13 (Massachusetts), 15 (Michigan), 17 (Missouri), 19 (Nevada), 21 (New Jersey), 23 (North Carolina), 25 (Tennessee), 31-32 (Nationwide)).

false and not actionable.  *See, e.g.*, *Registered Agent Sols., Inc. v. Corp. Serv. Co.*, No. 21-786 (SB), 2022 WL 911253, at *6 (D. Del. Mar. 28, 2022).

Other advertising language at issue here constitutes inactionable puffery.  "Often, marketing material is full of imprecise puffery that no one should take at face value." *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007).  "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993).  "Puffery is distinguishable from misdescriptions or false representations of specific characteristics of a product.  As such, it is not actionable." *Id.*; *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 922 (3d Cir. 1990) ("Mere puffing [is] advertising that is not deceptive for no one would rely on its exaggerated claims [and] is not actionable." (internal quotation marks omitted)).

Here, Plaintiffs challenge Whirlpool's broad marketing statements that its refrigerator "makes sure you always have plenty of ice on hand" and "churns out all the ice cubes you need, all year round."  (D.I. 39 ¶ 14).  These imprecise, vague promotions are "the kind of hyperbolic statements one would [not] take or be intended to take literally." *Toro Co. v. Textron, Inc.*, 499 F. Supp. 241, 253 n.23 (D. Del. 1980); *Victaulic*, 499 F.3d at 238 n.6 ("[A] company's marketing material [is] where puffery is the norm.").  The same is true for the puff that "the consumer will not need to 'worry about refilling ice trays.'"  (D.I. 39 ¶¶ 14, 139).  Indeed, "promises that a product will alleviate worry are not objectively measurable," and, thus, "are mere puffery." *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 744 (D. Del. 2022) (citation omitted).

To the extent Plaintiffs challenge these statements as a promise of reliability, dependability, or durability, they also fail.  *See, e.g.*, *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608 (D.N.J. 2016) ("The claims that [defendant's] products are [among other things] 'dependable' . . .

are neither measurable nor concrete, and are simply too imprecise to be considered material."). That is because descriptions of a product as "reliable [or] durable" are "advertisements amount[ing] to nothing more than non-actionable hyperbole or puffery." *Tatum v. Chrysler Grp. LLC*, No. 10-4269 (DMC), 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011); *EP Henry Corp. v. Cambridge Pavers, Inc.*, No. 17-1538 (JBS), 2017 WL 4948064, at *3 (D.N.J. Oct. 31, 2017) ("[L]anguage suggesting perpetuity or an indefinite period of time constitutes non-actionable puffery.").

Accordingly, these "general advertising statements are non-quantifiable 'mere puffery' and are, thus, the type of statements generally not actionable as common law fraud or under the various state-specific statutes that Plaintiffs invoke." *Maugain v. FCA US LLC*, No. 22-116 (GBW), 2023 WL 1796113, at *12 (D. Del. Feb. 7, 2023); *Catena v. NVR, Inc.*, No. 23-1642, 2024 WL 4003085, at *5 (3d Cir. Aug. 30, 2024) ("[The challenged advertising statements] were generic overstatements that an average consumer would know not to take literally or accept as statements of fact."). Thus, these allegations are insufficient to state a misrepresentation claim under Rule 9(b)'s rigorous pleading standard. *See, e.g.*, *Bellinger v. Labs. Topco LLC*, No. 23-695 (RGA), 2024 WL 1328836, at *5 (D. Del. Mar. 28, 2024).

## 2. Whirlpool's Duty to Disclose

The second element essential to many of Plaintiffs' claims is a duty to disclose.[2] Because Whirlpool knew of the alleged material defect, the theory goes, it had a duty to tell the market about it. And, because it did not, it made fraudulent omissions. (D.I. 39 ¶¶ 296, 353, 458).

The Complaint broadly asserts four bases for Whirlpool's duty to disclose: that Whirlpool (1) had "exclusive and superior knowledge" about the defect that "was not reasonably accessible

---

[2]    (*See* D.I. 43 at 18-22; D.I. 44, Tab 3; D.I. 46 at 14-20; D.I. 47, Tab A).

to Plaintiffs"; (2) "actively concealed the Defect from Plaintiffs"; (3) "made partial representations about the reliability, quality, and safety of the Class refrigerators but failed to fully disclose the Defect"; and (4) knew the Defect posed "a safety hazard."  (D.I. 39 ¶¶ 146, 296, 373, 382, 454, 543, 676, 811).  None are availing.

### a.    Exclusive and Superior Knowledge

The crux of Plaintiffs' first contention is that Whirlpool benefitted from unfair information asymmetry at the time of sale.  In other words, Whirlpool allegedly knew certain things about its products that Plaintiffs did not when they agreed to buy them.

First, Plaintiffs say that "Whirlpool conducts performance and durability testing on refrigerators . . . [which] would have necessarily revealed the Defect."  (D.I. 39 ¶¶ 163-64 ("Whirlpool must have discovered the Defect.")).  If true, this would put Whirlpool in a position of "superior" knowledge.  But these allegations are conclusory – made only "[u]pon information and belief" and unaccompanied by any of the "precision" required to fairly put a defendant on notice under Rule 9(b).  *Shuker*, 885 F.3d at 778; *Frederico*, 507 F.3d at 200.  Indeed, the allegations stop short of alleging that specific tests *in fact* revealed the defect.  (*Cf.* D.I. 39 ¶¶ 163, 166, 168 (tests "would have" revealed the defect)).  To survive a motion to dismiss, however, "Plaintiffs must allege more than an undetailed assertion that the *testing must have revealed the alleged defect*."  *Diaz v. FCA US LLC*, 693 F. Supp. 3d 425, 436-37 (D. Del. 2023) ("*Diaz II*") (citation and brackets omitted).  On the other hand, Plaintiffs provide nothing in their Complaint to rule out the equally plausible, benign explanation that Whirlpool's tests showed no defect and, therefore, that it had no superior knowledge and nothing to disclose.  *See Diaz v. FCA US LLC*, No. 21-906 (EJW), 2022 WL 4016744, at *30 (D. Del. Sept. 2, 2022) ("*Diaz I*") ("Plaintiffs' allegations of pre-sale testing data fail to factually demonstrate a plausible claim because they are conclusory.").

Plaintiffs' second ostensible basis for Whirlpool's exclusive and superior knowledge is the consumer reports and complaints decrying the quality of Whirlpool's refrigerators. (D.I. 46 at 18). Those publicly-posted product reviews – in some cases viewed by thousands of other consumers – do not constitute a font of "superior or exclusive" knowledge. It goes without saying that information available to millions of people on the internet with a few strokes of the keyboard by its very nature cannot be "exclusive or superior." *See Wesley v. Samsung Elecs. Am., Inc.*, No. 20-18629 (JMV), 2021 WL 5771738, at *3 (D.N.J. Dec. 3, 2021) ("A handful of public complaints on the third-party websites are not sufficient to establish that [Defendant] had exclusive or superior knowledge of the alleged defect.").

Plaintiffs attempt to circumvent this problem by asserting that Whirlpool had "aggregate information," took down certain of the negative online consumer reports, and funneled some complaints to other media channels such as Twitter or Facebook. (D.I. 39 ¶¶ 209-213). Those theories do not, however, plausibly fit with the bulk of Plaintiffs' allegations that this information was widely available online. For instance, Named Plaintiffs allege that they themselves "extensively researched Whirlpool information online," "reviewed customer reviews of Whirlpool refrigerators," and "conducted internet research of Whirlpool models on Lowe's, Home Depot's and Best Buy's websites," as well as "on Whirlpool's website." (*Id.* ¶¶ 34, 54, 92, 105, 112, 119). Some of them specifically "filtered the search results," investigated "how the ice maker worked," and were on the lookout for "negative reviews." (*Id.* ¶¶ 54, 92, 105). One allegation goes so far as to say that "[r]esearch ***quickly revealed*** that [the defect] was ***a common problem*** for their model refrigerator." (*Id.* ¶¶ 48, 265, 269) (emphasis added). Those contradictory allegations make it implausible that these public postings provided Whirlpool with exclusive or superior knowledge of the defect.

### b.    <u>Active Concealment</u>

Next, Plaintiffs contend that Whirlpool actively covered up the defect.  (D.I. 39 ¶¶ 294-98).  "To state that claim, [Plaintiffs] must plead that [Defendant] took affirmative action to conceal facts under[pin]ning [Plaintiffs'] claims."  *Garner*, 590 F. Supp. 3d at 747 (quotation marks omitted).  Although the Complaint's allegations to that effect are generally terse – most of them merely assert that "Whirlpool knew of but actively concealed the Defect," (D.I. 39 ¶ 350) – Plaintiffs' briefing suggests three ways that Whirlpool hid the problem:  by (i) removing internet posts; (ii) replacing defective refrigerator doors (with other defective doors); and (iii) denying that the defect existed when raised directly by consumers.  (*See* D.I. 46 at 20; D.I. 39 ¶¶ 12, 209, 210, 256).  The Court finds those assertions implausible, however, based on the weight of the Complaint's other allegations.

First, rather than deny it, Plaintiffs allege that Whirlpool met many of the consumer complaints head-on:  "Whirlpool responded to the vast majority of the complaints."  (D.I. 39 ¶ 207).  For example, the Complaint states that "when consumers posted negative reviews online, Whirlpool would respond by stating that they were 'constantly working to improve' their engineering, thereby suggesting that other consumers need not heed the negative review."  (*Id.* ¶ 144).  That renders Plaintiffs' contrary argument about denial implausible.

Second, Whirlpool's attempts to fix broken refrigerator doors, ostensibly at the request of its customers under the Limited Warranty, are not a plausible basis for fraudulent concealment. *See Rait v. Sears, Roebuck & Co.*, No. 08-2461 (JLL), 2009 WL 2488155, at *4 (D.N.J. Aug. 11, 2009) ("[Plaintiff] only has alleged that she purchased a product that broke once, that she was charged for a successful repair, and that there were some complaints about the product on the internet.").  If that position were accepted, "virtually every consumer product company would be subject to fraud claims and extensive discovery [because] [a]ll any plaintiff would be required to

show is that a product broke once and that someone had complained about it on the internet." *Id.*; *Oliver v. Funai Corp., Inc.*, No. 14-4532 (JLL), 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015). Not to mention, those allegations suggest that Whirlpool was trying to live up to its end of the Limited Warranty, rather than hide the defect. And, in any event, Plaintiffs' "general statements" about "aggregate repair and warranty data" are "the type of mere conclusory statements that the Court must ignore." *Maugain*, 2023 WL 1796113, at *10.

Finally, in two paragraphs, Plaintiffs allege that some consumer complaints were rerouted to Twitter or Facebook, removed in response to Plaintiffs' demand letter, or taken down altogether because they pertained to older Whirlpool refrigerator models no longer on offer. (D.I. 39 ¶¶ 209-10). None of these allegations imply "active" misconduct, particularly under Rule 9(b)'s "stringent pleading restrictions." *Frederico*, 507 F.3d at 200. Responding one-on-one to customers via Facebook or Twitter is run-of-the-mill customer service. Removing complaints *after* Plaintiffs sent their demand letter – well beyond the close of the Class Period – cannot logically have obscured Plaintiffs' knowledge of the consumer complaints *before* they purchased their refrigerators *during* the Class Period. *See Diaz I*, 2022 WL 4016744, at *29. And, finally, the Court sees nothing nefarious in Whirlpool shutting down web pages devoted to outdated models, otherwise known as inventory management. Therefore, Plaintiffs fail to plead fraudulent concealment.

### c.    **Partial Representations**

Plaintiffs next assert that "Whirlpool repeatedly made partial representations about the filtered-water ice and water dispensers, but these representations were only half true because Whirlpool knew they would fail well before their expected useful lives, and they are virtually irreparable." (D.I. 46 at 19). For the reasons already discussed, however, the statements Plaintiffs challenge are not actionable or representations upon which a reasonable consumer could rely.

*See supra*, Section III.A.1.   Nor does the Complaint adequately allege that testing alerted Whirlpool that the products would fail early.   *Id.*, Section III.A.2.a.   Therefore, they cannot give rise to a duty to disclose.

### d.     <u>Safety Hazard</u>

Finally, Plaintiffs claim that Whirlpool had a duty to disclose because the allegedly defective wiring in the Class Refrigerators created a safety hazard.   (D.I. 46 at 15-20; D.I. 39 ¶¶ 146-62).   The duty to disclose does not implicate every fact known to a manufacturer, however. It encompasses only "material" facts.   *Diaz I*, 2022 WL 4016744, at *23; *Garner*, 590 F. Supp. 3d at 744 ("Not all misrepresentations merit a lawsuit.   Actionable statements misstate 'material facts.'")).   In consumer products cases like this one, a material fact is one that "is likely to influence the purchasing decision" of a reasonable consumer, in light of the total mix of facts available at the time of purchase.   *U.S. Healthcare*, 898 F.2d at 926 (quoting *Toro*, 499 F. Supp. at 251).

Here, Plaintiffs provide several specific allegations that consumers complained of potential safety hazards, both on product reviews and to the CSPC.   (D.I. 39 ¶¶ 146-62, 189-92).   These complaints occurred across a twelve-year period, from 2012 to 2024.   (*Id.*).   Taken together, the fact that the safety complaints constitute a fraction of the 375 consumer complaints set out in the 800-paragraph Complaint (which are themselves an iota of Whirlpool refrigerators sold), as well as the protracted duration across which they occurred (12 years), leads the Court to find that Plaintiffs have not adequately alleged a material safety defect.   *See Diaz II*, 693 F. Supp. 3d at 435 ("Plaintiffs do not point to an unusual number of complaints within the span of nearly eight years relating to the alleged [product] Defect, so they are insufficient."); *Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681 (ES), 2024 WL 1366446, at *20 (D.N.J. Apr. 1, 2024) ("[G]iven the undoubtedly large quantity of [products] sold by Defendants, even [this many] consumer complaints are not an 'unusually high number of complaints.'")  (citation omitted); *Roe v. Ford*

*Motor Co.*, No. 18-12528 (LJM), 2019 WL 3564589, at *7 (E.D. Mich. Aug. 6, 2019) ("Plaintiffs' amended complaint does not include factual allegations that make it reasonable to infer that complaints about [the defect] were anything more than a blip on [defendant's] radar.").

Of course, at the pleading stage, Plaintiffs are not required to canvass the entire consumer set, track down every available class member who experienced a safety hazard, or meet any particular numerical threshold. But they do have to show that their safety defect theory is plausible, and that the purported risk was "unreasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1029 (9th Cir. 2017) ("[T]he standard is one of an 'unreasonable' safety risk."). On the back of these allegations, the Court is hard pressed to find that they have done so. *See Smith v. Gen. Motors LLC*, 988 F.3d 873, 885 (6th Cir. 2021) ("Plaintiffs' argument implies that [Defendant] knew about the safety ramifications of that defect when it sold the [products] even though the defect took time to manifest. That makes little sense.").

Once again, the allegations offered by Plaintiffs in support of the alleged safety defect work equally to support the opposite inference: that Whirlpool considered whether the wires were a safety hazard, and, after testing and evaluation, determined that they posed no real threat of harm – that the risk was immaterial. *See Roe*, 2019 WL 3564589, at *7 ("Plaintiffs' amended complaint gives little indication of the [product's] failure rate or how that rate compares to the failure rate of a part that the law would deem 'defective.'"); *Smith*, 988 F.3d at 885 ("[N]othing shows that the complaints about [the defect] were frequent enough that they were not lost in a sea of complaints and repairs amassing by the dozens each day.") (quotation marks omitted). That inference is further buttressed by Plaintiffs' assertion that this problem persisted for "more than a decade." (D.I. 39 ¶ 9, 190-94; D.I. 46 at 4). And, moreover, none of the Named Plaintiffs allege that they themselves experienced a safety hazard.

14

Because the Court finds that the Complaint fails to allege that the safety hazard constituted a material risk, it finds that Whirlpool was under no duty to disclose.

*****

Accordingly, because Plaintiffs fail to allege a misstatement, omission, or duty to disclose, the Court finds that their fraud-based claims are not adequately asserted.[3] The Court will therefore dismiss all common law and state statutory claims requiring these elements. *See* Appendix.

### B.    THE WARRANTY CLAIMS

In addition to their fraud-based claims, Plaintiffs assert claims for breach of express[4] and implied warranties[5] under state statutes or common law. The Court finds that the express warranty claims fail but that Plaintiffs have adequately alleged breaches of the implied warranty of merchantability.

### 1.    Breach of Express Warranty

The allegedly defective refrigerators came with a one-year Limited Warranty, which reads: "For one year from the date of purchase, when this major appliance is installed, operated and maintained according to instructions attached to or furnished with the product, Whirlpool . . . will pay for the Factory Specified Replacement Parts and repair labor to correct defects in materials or workmanship that existed when this major appliance was purchased, or at its sole discretion, replace the product." (D.I. 39 ¶¶ 159, 226, 757, 784). None of the Named Plaintiffs opted to

---

[3]    Because of this, the Court need not evaluate whether Plaintiffs have adequately alleged other elements of those claims, such as knowledge of the defect. *See, e.g.*, *Twardzik v. HP Inc.*, No. 21-396 (SB), 2022 WL 606092, at *6 (D. Del. Jan. 25, 2022), *aff'd*, No. 22-2650, 2023 WL 5770999 (3d Cir. Sept. 7, 2023).

[4]    (*See* D.I. 39, Counts 6 (California), 27-28 (Nationwide)).

[5]    (*See* D.I. 39, Counts 2 (Arizona), 7 (California), 9 (Florida), 12 (Illinois), 14 (Massachusetts), 16, (Michigan), 18 (Missouri), 20 (Nevada), 22 (New Jersey), 24 (North Carolina); 26 (Tennessee)).

purchase an extended warranty, which would have insured the refrigerators beyond the one-year window. (*Id.* ¶¶ 29, 121, 154).

Plaintiffs now assert that "Whirlpool breached these express warranties by selling defective Class Refrigerators that required repair or replacement within the applicable warranty period and failing to adequately repair the alleged Defect." (*Id.* ¶ 392). Whirlpool responds that the Limited Warranty does not cover Plaintiffs' claims for two reasons.

First, Whirlpool contends that the wiring failures alleged to be at issue here constitute "design defects" that are not protected by the Limited Warranty's plain language, which only guards against "defects in materials or workmanship." (D.I. 39 ¶ 757; D.I. 43 at 25-26). As the Third Circuit has explained, "a 'materials' defect is a failing in the quality of the actual substances used to make a product." *Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019). The Complaint makes those exact allegations here. For example, Plaintiffs assert that "Whirlpool utilized defective, brittle wire that quickly breaks," and "[d]ue to Whirlpool's use of defective materials, [therefore], the wires are too brittle to withstand flexing that occurs and is intended to occur with ordinary use." (D.I. 39 ¶¶ 6, 126, 758). Indeed, the Complaint is rife with allegations that Whirlpool sought to honor the Limited Warranty with respect to this very problem. (*See, e.g.*, *id.* ¶¶ 159, 170-88). Whirlpool or its affiliated retailers attempted to service the defective wiring within the one-year warranty window for some customers – though not the Named Plaintiffs. (*Id.*).

That brings us to Plaintiffs' second point: whether any of the Named Plaintiffs allege that Whirlpool failed to live up to the Limited Warranty with respect to *their own* refrigerators. "[T]he general rule . . . is that an express warranty does not cover repairs made after the applicable time has elapsed. Thus, latent defects discovered after the term of the warranty are not actionable." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (cleaned up,

citations omitted).  Named Plaintiffs concede that none of their defects arose within the one-year warranty window.  (D.I. 43 at 26-27; D.I. 46 at 27-28).  That bars them from recovery under the Limited Warranty.  *See Gotthelf v. Toyota Motor Sales, USA, Inc.*, 525 Fed. App'x. 94, 106 (3d Cir. 2013) ("Because [plaintiff] alleges that the defect manifested itself outside the warranty period, he does not state a valid claim for breach of warranty.").

Instead, Plaintiffs argue that the Limited Warranty's one-year period is inherently unconscionable.  (D.I. 46 at 27-28).  The Court disagrees.  "If [Plaintiffs] wanted more coverage, they could have bought extended warranties.  But they did not.  Extending their standard warranty would give them a retroactive rebate."  *Talley v. Gen. Motors, LLC*, No. 20-1137 (SB), 2021 WL 7209448, at *4 (D. Del. Nov. 26, 2021).  Nor are Plaintiffs' allegations of Whirlpool's knowledge sufficient to void the one-year limitation.  (D.I. 46 at 27-28).  "Whatever general knowledge [Defendant] possessed at the formation of the warranty does not render the time-limitation unconscionable without further evidence of unequal bargaining positions, compulsion, or other countervailing public interests."  *Block v. Jaguar Land Rover N. Am., LLC*, No. 22-1544, 2023 WL 3750594, at *2 (3d Cir. June 1, 2023).  As already explained in the context of Plaintiffs' fraud theories above, the Complaint makes no such allegations.  "[A]t most, Plaintiffs present the Court with a scenario in which a manufacturer knew of a potential defect, one that may or may not manifest for customers, but which did not manifest during the warranty period."  *Id*. (citation omitted).

Therefore, the Court finds that the Limited Warranty's one-year duration is not unconscionable, and Plaintiffs' express warranty claims are dismissed.

## 2.   <u>Breach of the Implied Warranty of Merchantability</u>

Plaintiffs also assert breaches of the implied warranty of merchantability under various state laws.  Whirlpool moves to dismiss those claims on two grounds.  First, Whirlpool says that

the Complaint fails to allege that Plaintiffs' defective refrigerators are not "fit for their ordinary purpose," because the refrigerators continue to keep food cold, and, therefore, they do not run afoul of the implied warranty of merchantability. (D.I. 43 at 23). Second, Whirlpool contends that several of the subclasses cannot sustain implied warranty claims under certain state laws that require privity between the Named Plaintiffs and the manufacturer. (*Id.* at 24).

### a.    A Refrigerator's Ordinary Purpose

The implied warranty of merchantability "protect[s] buyers from loss where the goods purchased are below commercial standards or are unfit for the buyer's purpose." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992). It attaches where the product is not "reasonably fit for the general purpose for which it is manufactured and sold." *N.J. Transit Corp. v. Harsco Corp*., 497 F.3d 323, 330 (3d Cir. 2007) (citation omitted).

Whirlpool asserts that, because Plaintiffs' refrigerators by and large still work – the wiring defect is not alleged to affect the product's core cooling and freezing functions – they are fit for their "ordinary purpose" and immune from coverage by the implied warranty. (D.I. 43 at 23-24). Whirlpool collects several out-of-circuit authorities in support of that stance. *See, e.g.*, *Sosenko v. LG Elecs. USA, Inc.*, No. 19-610 (JLS) (ADS), 2019 WL 6118355, at *6 (C.D. Cal. Aug. 29, 2019) ("The ordinary purpose of a refrigerator is to *consistently* chill food."); *Lee v. Samsung Elecs. Am., Inc*., No. 21-1321 (DHP), 2022 WL 4243957, at *15 (S.D. Tex. Sept. 13, 2022) ("The ordinary purpose for refrigerators is to keep perishables cold.").

Plaintiffs counter with their own set of non-binding cases, however – including some directly involving Whirlpool – which stand for the proposition that "the ordinary purpose of a refrigerator spans beyond keeping food cold." *Corzine v. Whirlpool Corp.*, No. 15-5764 (BLF), 2016 WL 6476172, at *4 (N.D. Cal. Nov. 2, 2016); *Nessle v. Whirlpool Corp.*, No. 07-3009 (CAB),

2008 WL 2967703, at *5 (N.D. Ohio July 25, 2008); *Rush v. Whirlpool Corp.*, No. 07-2022 (JLH), 2008 WL 509562, at *2 (W.D. Ark. Feb. 22, 2008). The Court finds those more persuasive.

In this day and age, a refrigerator is more than an ice chest. *Corzine*, 2016 WL 6476172, at *4 ("Gone are the days of ice harvesting, thanks to modern day refrigerators, the purpose of which should then encompass more functions than a block of ice."). "[M]aking and dispensing ice is an ordinary and intended use of the refrigerator." *Nessle*, 2008 WL 2967703, at *5; *Rush*, 2008 WL 509562, at *2 ("[T]he refrigerator has not performed its intended functions of preserving food and making ice."). According to the Complaint, that is why the Named Plaintiffs chose to buy Whirlpool's twin-door model with an exterior ice and filtered-water dispenser. Indeed, they "paid a premium" for it. (*See, e.g.*, D.I. 39 ¶¶ 31, 43, 56, 101, 129); *Avram v. Samsung Elecs. Am., Inc.*, No. 11-6973 (KM), 2013 WL 3654090, at *13 (D.N.J. July 11, 2013) ("[The implied warranty applies to features] for which consumers allegedly are willing to pay a premium."). That conclusion is further bolstered by the Complaint's allegations of "key features," which, at this stage, the Court must accept as true. (D.I. 39 ¶¶ 2, 14, 137, 820). And the Complaint further asserts that the door features' functionality (or lack thereof) impacts the storage space of both the cooling and freezing compartments, which is an added consideration affecting the refrigerator's "ordinary use." (*Id.* ¶¶ 54, 60, 69, 73).

Accordingly, the Court finds that Plaintiffs have adequately stated a claim for breach of the implied warranty of merchantability and will deny Whirlpool's motion to dismiss on those counts.

### b.    Lack of Privity

Each state's implied warranty law comes with its own contours. Relevant here, some of them bar recovery where the plaintiff lacks privity – a direct counterparty relationship – with the manufacturer. The parties contest this issue as to five of the state subclasses: Arizona, Florida,

19

Tennessee, Illinois, and North Carolina. Of them, "Plaintiffs concede that privity is required for and dispositive of the implied warranty claims" brought under the Arizona and Tennessee laws. (D.I. 46 at 25 n.37). Similarly, "Whirlpool concedes that Illinois recognizes a third-party beneficiary type exception" to the privity rule. (D.I. 50 at 13 n.3). Therefore, the Court will dismiss Counts 2 and 26, respectively, and will deny the motion to dismiss as to Count 12.

The parties dispute, however, whether Florida and North Carolina law permit an implied warranty claim to proceed without allegations of a direct contractual relationship. "In Florida, implied warranties are recognized *only when* the litigants were in privity with the manufacturer." *Diaz II*, 693 F. Supp. 3d at 442 (internal quotation marks omitted); *Talley*, 2021 WL 7209448, at *7. Plaintiffs acknowledge this limitation but contend that they are nonetheless exempted by "the third-party beneficiary exception." (D.I. 46 at 25). Applying Florida law, courts in this District have recently rejected that argument, including in a thorough examination of relevant Florida precedent by Judge Wallach. *See Diaz I*, 2022 WL 4016744, at *44 & n.49; *Diaz II*, 693 F. Supp. 3d at 442; *Talley*, 2021 WL 7209448, at *7. This Court agrees with that well-reasoned opinion and will dismiss Plaintiffs' Florida implied warranty claims for lack of privity.

Similarly, "North Carolina requires privity." *Avram*, 2013 WL 3654090, at *12. However, "there is an exception for an intended beneficiary, such as the ultimate purchaser of a [product] from a dealership." *Hickman v. Subaru of Am., Inc.*, No. 21-2100 (NLH), 2022 WL 11021043, at *7 (D.N.J. Oct. 19, 2022). Here, Plaintiffs allege that they were the end-users of the refrigerators purchased from third-party retailers and thus "are exempt from [the privity] requirement as they were the true consumers of the product." *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765 (JLL), 2017 WL 1902160, at *16 (D.N.J. May 8, 2017). The Court must accept those allegations at this stage; generally speaking, "[p]rivity is unsuitable for adjudication on a

Rule 12(b)(6) motion due to the inquiry's fact-intensive nature." *McMahon v. Volkswagen Aktiengesellschaft*, No. 22-1537 (EP), 2023 WL 4045156, at *14 (D.N.J. June 16, 2023) (cleaned up). Accordingly, Whirlpool's motion to dismiss the North Carolina class claims for lack of privity will be denied.

In summary then, the Arizona, Tennessee, and Florida subclasses cannot maintain a claim for lack of privity, but the Illinois and North Carolina class claims may proceed.

### C.   UNJUST ENRICHMENT

Count 30 of the Complaint asserts a claim for unjust enrichment, which "is pleaded in the alternative to the other warranty-based claims set forth herein should the Court deem the warranty claims unenforceable." (D.I. 39 ¶ 797). Generally, the Court will allow fallback unjust enrichment claims to proceed at the motion to dismiss stage, so long as they are adequately alleged. *See Gaucho Grp. Holdings, Inc. v. 3I LP*, No. 24-212 (MN), 2024 WL 4679236, at *7 (D. Del. Nov. 5, 2024); Fed. R. Civ. P. 8(d)(2). Here, though, they are not.

To state a claim for unjust enrichment, Named Plaintiffs must allege that Whirlpool directly benefitted from their refrigerator purchases. *See Garner*, 590 F. Supp. 3d at 748. The Complaint says Plaintiffs paid third-party retailers such as Lowe's and Home Depot for their allegedly defective refrigerators. But it does not trace that money back to Whirlpool's pocket. Each Named Plaintiff alleges that they "bought the [product] from a third-party retailer and has not said whether the proceeds from that sale ended up in [Whirlpool's] hands." *Id*. Instead, they offer the bare conclusion that "Whirlpool has voluntarily accepted and retained these profits." (D.I. 39 ¶ 799). That is not enough to carry Plaintiffs' pleading burden. *Fishlock*, 2024 WL 1156719, at *3 ("[Plaintiff] bought his [product] from a third-party retailer and alleges only vague implications that [Defendant] ended up with his money.") (cleaned up). Accordingly, Plaintiffs' unjust enrichment claim is dismissed.

**D.    STANDING**

Finally, Whirlpool raises two issues of standing:  (1) that Named Plaintiffs lack standing

to assert claims on behalf of a nationwide class; and (2) that they fail to assert a claim under the

Magnus-Moss Warranty Act because they have fewer than 100 named plaintiffs.[6]

**1.    Standing for a Nationwide Class**

Whirlpool asserts that Named Plaintiffs lack Article III standing to brings claims on behalf

of a nationwide class.  (D.I. 43 at 28).  They argue that a named plaintiff cannot represent unnamed

class members who suffered injuries in different states and under different laws.  (*Id.*).  Plaintiffs

counter that this is a Rule 23 issue properly reserved for adjudication at the class certification stage,

and, therefore, not fit for decision on the present motion to dismiss.  (D.I. 46 at 29).

Recent authority in this District has come down on both sides of the issue.[7]  And there is

disagreement on the point elsewhere within this Circuit.[8]  Some courts have concluded that the

---

[6]    Whirlpool additionally seeks to dismiss Plaintiffs' Tennessee Consumer Protection Act ("TCPA") claim on the basis that the TCPA prohibits class actions as a matter of law. (D.I. 43 at 29); *see Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 310-11 (Tenn. 2008) ("Class actions are still prohibited because they are not actions brought 'individually.'"); *see also Faber v. CIOX Health, LLC*, No. 16-2337 (STA), 2017 WL 5957206, at *7 (W.D. Tenn. Sept. 29, 2017) (same), *aff'd*, 944 F.3d 593 (6th Cir. 2019). Although the Court sees the sense in that contention, it need not consider this alternative basis for dismissal given that Plaintiffs' TCPA claim has already been dismissed for failure to allege a misstatement, omission, and duty to disclose.

[7]    *Compare, e.g.*, *Twardzik*, 2022 WL 606092, at *3-4, *and In re Seroquel XR Antitrust Litig.*, No. 20-1076 (CFC), 2022 WL 2438934, at *15-16 (D. Del. July 5, 2022), *with In re Sensipar Antitrust Litig.*, MDL No. 2895 (LPS), 2022 WL 736250, at *16-18 (D. Del. Mar. 11, 2022), *and Petro*, 2024 WL 3848433, at *10.

[8]    *Compare, e.g.*, *Snowdy*, 2024 WL 1366446, at *4-7 ("Plaintiffs can only assert claims on behalf of individuals in states where at least one named Plaintiff has standing for that claim."), *and Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755 (BRM), 2023 WL 6890996, at *8 (D.N.J. Oct. 19, 2023) ("Named plaintiffs who incur injuries under the laws of their respective states cannot assert Article III standing to pursue separate, distinct state-law claims under the laws of other states where they suffered no alleged injury."), *with Rolland v. Spark Energy, LLC*, No. 17-2680 (MAS), 2019 WL 1903990, at *5 & nn.5-

---

three prongs of Article III standing – injury in fact, traceability, and redressability – are to be evaluated for each named plaintiff irrespective of the locus or residency of those they seek to represent. *See, e.g.*, *Twardzik*, 2022 WL 606092, at *3; *Garner*, 590 F. Supp. 3d at 743; *Maugain*, 2023 WL 1796113, at *4-5. That has led those courts to "defer[ the] standing analysis" until class certification. *Seroquel*, 2022 WL 2438934, at *16.

Others have ruled that Article III standing is a threshold prudential matter to be determined at the outset of an action, and that "Plaintiffs lack standing [in a putative class action] to bring claims under the laws of states in which they do not reside, and in which none of their injuries are alleged to have taken place."[9] *Diaz I*, 2022 WL 4016744, at *11; *Sensipar*, 2022 WL 736250, at *18 ("[I]f it is the ***class representative*** who presents a standing problem, then ***that*** standing issue must be addressed first, prior to deciding class certification. After all, if the class representative lacks standing, then there is no Article III suit to begin with – class certification or otherwise." (citation omitted)); *Petro*, 2024 WL 3848433, at *10 ("[N]amed plaintiffs cannot bring claims on behalf of putative class members unless they have standing to bring those claims themselves.").

Part of the divide concerns conflicting views of the Third Circuit's decision in *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015). In *Neale*, the Court held that

---

6 (D.N.J. Apr. 29, 2019) ("[T]he Court is not inclined to dismiss or strike Plaintiff's class allegations at the motion to dismiss stage, and finds this issue better suited for the class certification stage."), *and Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*, No. 20-6717 (JMV), 2021 WL 960875, at *6 (D.N.J. Mar. 15, 2021) ("[A]s long as the named plaintiff has standing, it can bring claims on behalf of a nationwide class.").

9     *See also Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) ("Plaintiffs lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury."); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 & n.20 (E.D. Pa. 2014) (same); *Cohen v. Subaru of Am., Inc.*, No. 20-8442 (JHR), 2022 WL 721307, at *6 & n.11 (D.N.J. Mar. 10, 2022) (same); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 158 (E.D. Pa. 2009).

"unnamed, putative class members need not establish Article III standing . . . so long as a class representative has standing." *Id.* The Court agrees with the observation that "the express holding of the Court in *Neale* . . . does not speak directly to th[is] question." *Seroquel*, 2022 WL 2438934, at \*16. Thus, "[s]ince *Neale* can be read to permit or to prohibit the deferral of the standing inquiry until after class certification, the Court does not find that *Neale* mandates a particular result." *Maugain*, 2023 WL 1796113, at \*5. Given that option, the Court "will defer the standing inquiry until class certification." *Crowell v. FCA US LLC*, No. 23-13 (MN), 2024 WL 4333088, at \*12 (D. Del. Sept. 27, 2024).

Ultimately, the Court is dubious that Plaintiffs will ultimately be able to show that a nationwide class is proper – consider, for instance, that there are three independent privity doctrines across the five state subclasses examined earlier in the Court's implied warranty analysis. Nonetheless, it reserves decision on the issue "for pragmatic reasons." *Seroquel*, 2022 WL 2438934, at \*16. ("[The Court] see[s] no reason to wade through complex issues of jurisdiction and constitutional law when determinations of fact and interpretation of Rule 23 could well resolve the issue."). Whirlpool's attack on the Named Plaintiffs' standing can be renewed at the class certification phase.

### 2. The Magnuson-Moss Warranty Act

Count 29 of the Complaint asserts a claim under the Magnuson-Moss Warranty Act ("MMWA"). (D.I. 39 ¶¶ 768-94). The MMWA creates federal jurisdiction for a putative class of consumers to sue for breach of warranty – a cause of action normally confined to state courts. 15 U.S.C. § 2310(d); *Talley*, 2021 WL 7209448, at \*5-6. There is a caveat, however: "Magnuson-Moss permits class actions in federal court only where there are 100 named plaintiffs." *Garner*, 590 F. Supp. 3d at 748; 15 U.S.C. § 2310(d)(3)(C) ("No claim shall be cognizable . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred."). Here,

Plaintiffs are 86 members short – there are only 14 Named Plaintiffs in this action. Accordingly, MMWA's "requirement [] that a class action name at least one hundred plaintiffs [] is not satisfied." *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 182 (3d Cir. 2023) ("MMWA claims can only be brought in federal court if the § 2310(d)(3) requirements are satisfied.").

Plaintiffs argue that the Court nonetheless has discretion to exercise supplemental jurisdiction over its MMWA claim, relying on dicta from a footnote in *Rowland* (which itself relies on dicta in a footnote). *See* 73 F.4th at 183 n.10 (citing *Suber v. Chrysler Corp.*, 104 F.3d 578, 588-89 n.12 (3d Cir. 1997)). Multiple courts in this Circuit have recently rejected that reading of *Rowland* as "incorrect as a matter of law." *Paolucci v. FCA US LLC*, No. 23-2982 (ZNQ), 2024 WL 3355390, at *4 (D.N.J. July 9, 2024); *Williams v. Samsung Elecs. Am., Inc.*, No. 23-989 (EP), 2024 WL 1328133, at *5 (D.N.J. Mar. 28, 2024) ("[C]ourts consistently find that [§ 2310(d)(3)] illustrates Congress' desire to limit a federal court's ability to hear MMWA claims. Thus, in a class action case, the Court can exercise jurisdiction *only if* there are at least 100 named plaintiffs." (cleaned up)); *see also Talley*, 2021 WL 7209448, at *7; *Garner*, 590 F. Supp. 3d at 748. *Rowland* itself acknowledges that Plaintiffs' reading "would render the MMWA's named-plaintiff requirement meaningless." 73 F.4th at 183.

Because there are only 14 Named Plaintiffs here, the Court will dismiss the MMWA claim.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss the Second Amended Class Action Complaint (D.I. 42) is GRANTED-IN-PART and DENIED-IN-PART. A table of surviving and dismissed claims is provided in the Appendix below. An appropriate order will follow.

**APPENDIX**

| Count | Claim | Status |
|---|---|---|
| 1 | Arizona Consumer Fraud Act | Dismissed |
| 2 | Breach of Implied Warranty (AZ) | Dismissed |
| 3 | California Consumers Legal Remedies Act | Dismissed |
| 4 | California Unfair Competition Law | Dismissed |
| 5 | California False Advertising Law | Dismissed |
| 6 | California Song-Beverly Consumer Warranty Act (Express) | Dismissed |
| 7 | California Song-Beverly Consumer Warranty Act (Implied) | Not Dismissed |
| 8 | Florida Deceptive & Unfair Trade Practices Act | Dismissed |
| 9 | Breach of Implied Warranty (FL) | Dismissed |
| 10 | Illinois Consumer Fraud & Deceptive Business Practices Act | Dismissed |
| 11 | Illinois Uniform Deceptive Trade Practices Act | Dismissed |
| 12 | Breach of Implied Warranty (IL) | Not Dismissed |
| 13 | Massachusetts Consumer Protection Act | Dismissed |
| 14 | Breach of Implied Warranty (MA) | Not Dismissed |
| 15 | Michigan Consumer Protection Act | Dismissed |
| 16 | Breach of Implied Warranty (MI) | Not Dismissed |
| 17 | Missouri Merchandising Practices Act | Dismissed |
| 18 | Breach of Implied Warranty (MO) | Not Dismissed |
| 19 | Nevada Deceptive Trade Practices Act | Dismissed |
| 20 | Breach of Implied Warranty (NV) | Not Dismissed |
| 21 | New Jersey Consumer Fraud Act | Dismissed |
| 22 | Breach of Implied Warranty (NJ) | Not Dismissed |
| 23 | North Carolina Unfair & Deceptive Acts and Practices Act | Dismissed |

| Count | Claim | Status |
|-------|-------|--------|
| 24 | Breach of Implied Warranty (NC) | Not Dismissed |
| 25 | Tennessee Consumer Protection Act | Dismissed |
| 26 | Breach of Implied Warranty (TN) | Dismissed |
| 27 | UCC Breach of Express Warranty (Breaches of Facts & Descriptions) | Dismissed |
| 28 | UCC Breach of Express Warranty (Failure to Repair or Replace) | Dismissed |
| 29 | Magnuson-Moss Warranty Act | Dismissed |
| 30 | Unjust Enrichment | Dismissed |
| 31 | Common Law Fraud | Dismissed |
| 32 | Negligent Misrepresentation | Dismissed |